**U.S. Court of Appeals Case No. 21-16093**
**U.S. District Court Case No. 3:20-cv-07476-VC**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**ANOTHER PLANET ENTERTAINMENT, LLC**,

Plaintiff-Appellant,

**v.**

**VIGILANT INSURANCE COMPANY,**

Defendant-Appellee.

---

Appeal from the United States District Court
For the Northern District of California, San Francisco
Hon. Vince Chhabria

---

**APPELLANT'S OPENING BRIEF**

---

Kirk Pasich, SBN 94242
KPasich@PasichLLP.com
Nathan M. Davis, SBN 287452
NDavis@PasichLLP.com
Arianna M. Young, SBN 314043
AYoung@PasichLLP.com

PASICH LLP
10880 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90024

Telephone: (424) 313-7860
Facsimile: (424) 313-7890

*Attorneys for Plaintiff-Appellant Another Planet Entertainment, LLC*

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ............................................................8

STATEMENT OF ISSUES..................................................................9

STATEMENT OF AUTHORITY............................................................11

STATEMENT OF THE CASE ..............................................................11

STATEMENT OF FACTS ...................................................................14

I.   Factual Background .................................................................14

II.  Procedural Background..............................................................18

SUMMARY OF ARGUMENT ..............................................................21

ARGUMENT .................................................................................25

I.   Standard of Review .................................................................25

II.  Principles of Policy Interpretation................................................26

III. Another Planet Sufficiently Alleged That SARS-CoV-2 Was
     Present and Caused Direct Loss or Damage to Property.............30

     A.   Recent California Decisions Do Not Warrant Affirming the
          District Court's Decision..........................................................36

     B.   The Exclusion for Virus-Related Liability Shows that
          Viruses Can Cause Direct Loss of or Damage to Property......40

IV.  Another Planet Sufficiently Alleged Entitlement to Civil
     Authority Coverage .................................................................45

V.   Another Planet Sufficiently Alleged Entitlement to Mitigation
     Damages .................................................................................47

VI.  Another Planet Should Be Allowed to Present Its Case ...............49

VII.  Conclusion ......................................................................52

CERTIFICATION OF WORD COUNT...................................................54

STATEMENT OF RELATED CASES ....................................................55

ADDENDUM ..........................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIG Prop. Cas. Co. v. Cosby,*
  892 F.3d 25 (1st Cir. 2018) (Souter, J.) .............................................. 41

*AIU Ins. Co. v. Superior Court,*
  51 Cal. 3d 807 833 (1990) ........................................................... *passim*

*Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.,*
  268 Wis. 2d 16 (2004).......................................................................... 42

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.,*
  45 Cal. App. 4th 1 (1996) .............................................................. 30, 32

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).............................................................................. 51

*Atl. Mut. Ins. Co. v. J. Lamb, Inc.,*
  100 Cal. App. 4th 1017 (2002) ............................................................ 28

*Carlin v. DairyAmerica, Inc.,*
  705 F.3d 856 (9th Cir. 2013).............................................................. 25

*Daubert v. Merrill Dow Pharm., Inc.,*
  509 U.S. 579 (1993).............................................................................. 51

*Dore v. Arnold Worldwide, Inc.,*
  39 Cal. 4th 384 (2006)......................................................................... 43

*Fireman's Fund Ins. Cos. v. Atl. Richfield Co.,*
  94 Cal. App. 4th 842 (2001) .................................................... 30, 41, 42

*Garvey v. State Farm Fire & Cas. Co.,*
  48 Cal. 3d 395 (1989) .................................................................... 27, 28

*Globe Indem. Co. v. State of California,*
  43 Cal. App. 3d 745 (1974).................................................................. 48

*Haynes v. Farmers Ins. Exch.*,
    32 Cal. 4th 1198 (2004).........................................................................29

*Hovespian v. State Farm Mut. Auto. Ins. Co.*,
    2011 WL 13213900 (C.D. Cal. Jan. 12, 2011) ...................................50

*Hughes v. Potomac Ins. Co. of D.C.*,
    199 Cal. App. 2d 239 (1962)........................................................35, 36

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
    71 Cal. App. 5th 688 (2022), *review denied* (Mar. 9, 2022)........ *passim*

*Jordan v. Allstate Ins. Co.*,
    116 Cal. App. 4th 1206 (2004) ...........................................................45

*Karen Kane Inc. v. Reliance Ins. Co.*,
    202 F.3d 1180 (9th Cir. 2000).............................................................26

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008).......................................................25, 45

*MacKinnon v. Truck Ins. Exch.*,
    31 Cal. 4th 635 (2003)..........................................................29, 30, 42

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008).............................................................25

*Meraz v. Farmers Ins. Exch.*,
    92 Cal. App. 4th 321 (2001) ...............................................................29

*MRI Healthcare Center, Inc. v. State Farm General Ins. Co.*,
    187 Cal. App. 4th 766 (2010) .......................................................33, 34

*Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.*,
    77 Cal. App. 5th 753 (2022) ...............................................................38

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
    69 Cal. 2d 33 (1968) ...........................................................................43

*Pardee Construction Co. v. Ins. Co. of the West*,
    77 Cal. App. 4th 1340 (2000) .............................................................44

*Ponder v. Blue Cross of S. California*,
    145 Cal. App. 3d 709 (Ct. App. 1983) ................................................ 29

*Premier Commc'ns Network, Inc. v. Fuentes*,
    880 F.2d 1096 (9th Cir. 1989) ........................................................... 26

*Rabkin v. Ore. Health Scis. Univ.*,
    350 F.3d 967 (9th Cir. 2003) ............................................................. 26

*S. Cal. Edison Co. v. Harbor Ins. Co.*,
    83 Cal. App. 3d 747 (1978) ................................................................ 48

*Safeco Ins. Co. of Am. v. Robert S.*,
    26 Cal. 4th 758 (2001) ................................................................. 28, 44

*Salve Regina Coll. v. Russell*,
    499 U.S. 225 (1991) ..................................................................... 25, 26

*Stanford Univ. Hosp. v. Fed. Ins. Co.*,
    174 F.3d 1077 (9th Cir. 1999) ........................................................... 26

*State Farm Mut. Auto. Ins. Co. v. Jacober*,
    10 Cal. 3d 193 (1973) ........................................................................ 29

*Stephens v. City of Vista*,
    994 F.2d 650 (9th Cir. 1993) ............................................................. 43

*Strickland v. Fed. Ins. Co.*,
    200 Cal. App. 3d 792 (1988) .............................................................. 36

*Ticketmaster, LLC v. Ill. Union Ins. Co.*,
    524 F. App'x 329 (9th Cir. 2013) ...................................................... 30

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    2018 WL 3829767 (C.D. Cal. July 11, 2018) ..................................... 36

*Travelers Cas. & Sur. Co. v. Superior Court*,
    63 Cal. App. 4th 1450 (1998) ....................................................... 27, 44

*Travelers Prop. Cas. Co. of Am. v. Superior Court*,
    215 Cal. App. 4th 561 (2013) ............................................................ 28

*United Talent Agency v. Vigilant Ins. Co.*,
    77 Cal. App. 5th 821 (2022) .................................................. 22, 39, 40

*Wash. Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp.*,
    876 F.2d 690 (9th Cir. 1989) ............................................................ 25

*Young's Mkt. Co. v. Am. Home Assurance Co.*,
    4 Cal. 3d 309 (1971) ....................................................................... 48

## Statutes

California Civil Code § 1636 .................................................................. 26

California Civil Code § 1638 .................................................................. 27

California Civil Code § 1641 .................................................................. 28

California Code of Civil Procedure § 1859 ............................................ 26

California Insurance Code § 531 ........................................................... 47

## Other Authorities

*Access,* Merriam-Webster Online Dictionary (Mar. 30, 2021) ............... 46

California Rules of Court 8.548 ............................................................ 40

Croskey, et al., *Cal. Prac. Guide: Insurance Litigation*
    § 6:253.1 (2020) ............................................................................ 27

*Prohibit*, Merriam-Webster Online Dictionary (Jan. 18, 2021) ............. 46

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California exercised jurisdiction over this case per Title 28 of the United States Code, section 1332(a), because neither party is a citizen of the same state and the amount in controversy exceeds $75,000.

Plaintiff-Appellant Another Planet Entertainment, LLC, appeals from the District Court's order granting Defendant-Appellee Vigilant Insurance Company's motion to dismiss Another Planet's First Amended Complaint. The District Court entered that order and a judgment disposing of all claims asserted in the action on June 21, 2021. Another Planet filed its Notice of Appeal on June 28, 2021. Thus, this Court has jurisdiction over this appeal per Title 28 of the United States Code, section 1291, and Federal Rules of Appellate Procedure 3(a) and 4(a).

## STATEMENT OF ISSUES

This appeal concerns insurance coverage for economic losses incurred during the COVID-19 pandemic.

1. Whether Another Planet sufficiently alleges that the SARS-CoV-2 virus was present in and on its insured premises.

2. Whether Another Planet sufficiently alleges that the presence of SARS-CoV-2 in and on property constitutes "direct physical loss or damage to property," as that term is used in "all-risk" property insurance policies and interpreted under California law.

3. Whether Another Planet sufficiently alleges that state and local government agencies and officials issued "shut-down" and closure orders during the COVID-19 pandemic, at least in part, in response to SARS-CoV-2 causing "direct physical loss or damage to property" within the vicinity of Another Planet's insured premises.

4. Whether Another Planet sufficiently alleges that it incurred losses in an effort to reduce covered loss and damage, as required by the insurance policy's terms and pursuant to California's mitigation doctrine.

5.    Whether Another Planet should be permitted to develop evidence regarding whether the parties understood that a virus like SARS-CoV-2 could cause "direct physical loss or damage to property," given a reasonable interpretation of the policy that suggests the parties did have that understanding and that Another Planet pleads facts suggesting a latent ambiguity on this interpretive issue, at the very least.

## STATEMENT OF AUTHORITY

All applicable statutes, regulations, or uncommon authorities are reproduced in the argument sections that follow.

## STATEMENT OF THE CASE

Another Planet is an independent operator and exclusive promoter of concerts, events, and festivals at the Greek Theatre at UC Berkeley, the Bill Graham Civic Auditorium in San Francisco, the Fox Theater in Oakland, and the Lake Tahoe Outdoor Arena at Harveys. Excerpts of Record (hereinafter "E.R.") 3-E.R.-380 ¶ 3. Vigilant is an insurer that sold Another Planet a broad, "all-risk" property insurance policy protecting Another Planet against losses of business income when there was, to quote the policy, "direct loss or damage to property" (the "Policy"). *Id.*

As SARS-CoV-2 and COVID-19 began spreading around the United States, Another Planet was forced to suspend its operations, close the concert venues, and cancel performances for almost all of 2020 and well into 2021. *Id.* ¶ 4. SARS-CoV-2, COVID-19, and the orders of state and local civil authorities and guidance from the Centers for Disease Control impaired Another Planet's ability to use its insured locations for their intended uses and purposes. *Id.* ¶ 5. The closures also

11

were necessary for Another Planet to mitigate it damages. *Id*. As a result, Another Planet suffered substantial financial losses, including lost profits, lost commissions, and lost business opportunities.

When Another Planet turned to Vigilant, Another Planet reasonably expected Vigilant to cover its losses. 3-E.R.-381 ¶ 6. However, instead of honoring its obligations, Vigilant wrongfully denied coverage and refused to pay Another Planet for any portion of its losses. *Id.* By this lawsuit, Another Planet seeks damages to compensate it for Vigilant's contractual breaches, bad faith, and fraud. It also seeks declaratory relief confirming that its losses are covered and will continue to be covered as they continue to be incurred.

Another Planet certainly acknowledges that the vast majority (or more) of the decisions to date in insurance coverage cases relating to COVID-19 cases have rejected coverage. However, this case is unlike those cases for two primary reasons. First, the Policy's language is different from other policies in other cases. Almost all the policies involved in other cases are property insurance policies. This Policy is a "package" that combines multiple types of coverage, including property and liability coverages. In doing so, Vigilant expressly recognized that

viruses could damage property and decided to exclude coverage for such claims or losses only in one of the parts of the Policy—the liability section, but not the controlling property and business income sections. Thus, when the Policy's applicable language is interpreted in the context of the Policy as a whole, it shows that Another Planet's allegations are at least plausible (all that if required at this stage), if not undeniable. Therefore, unlike other cases in which courts have held that SARS-CoV-2 cannot trigger "all risks" coverage in the first instance, it is impossible to come to that same conclusion here unless one ignores the Policy's mechanics and explicit provisions.

Second, unlike most other cases, Another Planet expressly alleged that SARS-CoV-2 was on, in, and around insured premises and provided the factual basis to prove that the virus caused the damage required to trigger the Policy's numerous property and business interruption coverages. This is precisely the scenario that the California Court of Appeal recently explained would give rise to coverage for pandemic-related business losses. *See Inns-by-the-Sea v. California Mutual Insurance Co.*, 71 Cal. App. 5th 688, 704 (2022), *review denied* (Mar. 9, 2022).

Vigilant may have succeeded in convincing the district court to disregard these unique aspects of this COVID-19 coverage case, as well as Another Planet's express allegations that should more suffice at the pleading stage. But this Court now has the opportunity to refocus on the details and reinstate the First Amended Complaint in its entirety.

## STATEMENT OF FACTS

### I. Factual Background

Vigilant sold Another Planet a Customarq Series Entertainment Insurance Program, which includes a Property Insurance Section and a Liability Insurance Section and was in effect May 1, 2019, to May 1, 2020 (the "Policy"). 3-E.R.-439. The Property Insurance section of the Policy is an "all risk" property insurance policy—that is, a policy that covers all risks of physical loss or damage except those plainly, clearly, conspicuously, and expressly excluded. 3-E.R.-456. Unlike "enumerated perils" property insurance policies, which cover only certain causes of loss, "all risk" property insurance policies provide broad coverage for unprecedented and unanticipated risks of loss. 3-E.R.-395 ¶ 46. The Policy is comprised of various forms and endorsements that define the scope of coverage. 3-E.R.-396 ¶ 47; *see generally* 3-E.R.-427. Like most commercial property insurance policies, the Policy insures not only

against physical loss or damage to covered property, but also for resulting economic and financial losses, referred to in the Policy as "Business Income With Extra Expense" coverage. 3-E.R.-483-97.

The Policy's Business Income With Extra Expense coverage is designed, understood, stated, and intended to cover Another Planet for economic losses, including losses from the interruption and/or reduction of its business, suffered as a result of "direct physical loss or damage" to covered property that is "caused by or result[s] from a covered peril." 3-E.R.-485. Vigilant elected not to define or explain the phrase "direct physical loss or damage." *See generally* 3-E.R.-483-97. Under this coverage, Vigilant agreed to pay for Another Planet's actual loss of Business Income sustained due to the "impairment" of Another Planet's operations. 3-E.R.-485.

The "Extra Expense" portion of this coverage grant is designed, understood, stated, and intended to cover Another Planet for losses from "the actual or potential impairment" of its "operations." *Id.* Within the Business Income With Extra Expense coverage, the Policy provides an "Additional Coverage" for "Civil Authority," which obligates Vigilant to pay Another Planet's "business income loss" and "extra expense"

15

"incur[red] due to the actual impairment of [its] operations, directly caused by the prohibition of access to: [its] premises; or a dependent business premises, by a civil authority." 3-E.R.-487. The "prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such dependent business premises by a covered peril, provided such property is within: one mile . . . from such premises or dependent business premises . . . ." 3-E.R.-488.

The Policy also provides an "Additional Coverage" for "Dependent Business Premises," which obligates Vigilant to pay Another Planet's "business income loss . . . due to the actual impairment of [its] operations" and its "extra expense . . . due to the actual or potential impairment of [its] operations." *Id.* The "actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a covered peril to property . . . at a dependent business premises." *Id.*

The Policy defines "dependent business premises" as "premises operated by others on whom [Another Planet] depend[s] to: deliver materials or services to you or to others for your account (contributing

premises); [and] accept your products or services (recipient premises)."
3-E.R.-569-70. Vigilant's knowledge of the ability of a virus to cause
property damage is further evidenced by its inclusion of a virus-related
exclusion in the liability portion of the package policy that it sold to
Another Planet. 4-E.R.-732. Even though the liability portion of the
Policy covers "damages that the insured becomes legally obligated to
pay by reason of liability: imposed by law; or assumed in an insured
contract; for . . . property damage caused by an occurrence to which this
coverage applies," 4-E.R.-634, it excludes coverage for "damages, loss,
cost or expense arising out of the actual, alleged or threatened
contaminative, pathogenic, toxic or other hazardous properties of
biological agents," 4-E.R.-732. "Biological Agents" is defined to include
"viruses or other pathogens (whether or not a microorganism)." 4-E.R.-
733. The Policy's property coverage does not contain any exclusion for
losses caused by or resulting from the viruses, communicable diseases,
or pandemics.

As alleged in the First Amended Complaint, Another Planet
sustained covered Business Income and Extra Expense losses as defined
in the Policy. These Business Income and Extra Expense losses were

sustained due to the "impairment" of Another Planet's business operations as a result of "direct physical loss or damage" to insured premises and "dependent business premises." These Business Income and Extra Expense losses were also caused by the state, municipal, and other civil authority orders issued throughout the United States, each of which were issued in response to the actual presence of the virus and constitute a "prohibition of access by a civil authority" as that phrase is used in the Policies.

## II. <u>Procedural Background</u>

Another Planet filed this action on October 23, 2020, asserting claims for contractual breaches, bad faith, and fraud and seeking damages and declaratory relief. 4-E.R.-792. In response, Vigilant filed a motion to dismiss, arguing principally that that (a) the complaint failed to allege "direct physical loss or damage" to property; (b) Another Planet's allegations regarding the presence of COVID-19 at insured premises were "conclusory"; and (c) Another Planet could not demonstrate that civil authority coverage was triggered. 4-E.R.-793. The District Court granted Vigilant's motion, concluding that "Another Planet's facilities did not shut down because of the virus's presence on

18

facility surfaces. Rather, those facilities shut in response to the closure

orders, which would have required them to remain closed even if

Another Planet could have proven to a certainty that the virus was not

present at its facilities." 4-E.R.-785. The court further held that Another

Planet had not established Civil Authority coverage because the

Closure Orders in the Complaint "were clearly passed in response to the

virus in the community at large, not in specific response to the presence

of the virus at properties within a mile of Another Planet's facilities." 4-

E.R.-786. The court, nonetheless, noted that it was theoretically

possible for an insured to establish "that the virus created physical loss

or damage" granted Another Planet leave to amend. 4-E.R.-785-86.

Another Planet filed a First Amended Complaint asserting

additional allegations in support of its claim for covered losses. 3-E.R.-

379. In the First Amended Complaint, Another Planet alleged that the

SARS-CoV-2 virus was present on and in its properties, the properties

of dependent businesses, and on property within the vicinity of its own

insured premises. 3-E.R.-405-06 ¶¶ 76-78. Another Planet also alleged

that the virus's presence physically alters property. 3-E.R.-380 ¶ 5, 398

¶ 53. The First Amended Complaint stated the scientific information

19

supporting these allegations. 3-E.R.-398-401 ¶¶ 51-57. Another Planet further described the government's response to the virus's spread and alleged that the response was motivated—in part—to slow, limit, and prevent physical loss of and damage to property. 3-E.R.401-05 ¶¶ 58-75. Because of the virus's presence and the resulting civil authority orders, Another Planet alleged that its business had been impaired within the Policy's meaning, thus damaging Another Planet. 3-E.R.-406 ¶ 79. Finally, Another Planet alleged that it had incurred costs to prevent SARS-CoV-2 from entering (and thus damaging) its property, to which Another Planet is entitled to coverage under mitigation doctrine. 3-E.R.-406 ¶ 76.

Vigilant filed another motion to dismiss. 3-E.R.-356. The Court granted Vigilant's second motion, this time with prejudice, holding that additional allegations regarding civil authority orders did not establish that those orders were passed "'as a direct result' of the virus having caused actual property damage" to locations near Another Planet's insured properties and that Another Planet's claim for coverage under the Building and Personal Property coverage was not sufficiently tied to any claimed losses for direct physical loss or damage caused by the

virus. 1-E.R.-003-04. The district court premised these holdings on the supposition that whether the virus was present at the relevant locations "seems unknowable," 4-E.R.-785, and reasoned that the premises were closed solely because of civil authority orders, not because of the virus' presence. 1-E.R.-003.

Another Planet subsequently filed this appeal. 4-E.R.-788.

## SUMMARY OF ARGUMENT

Vigilant moved to dismiss Another Planet's First Amended Complaint. The district court granted that motion, observing that it was unlikely that Another Planet could prove that the SARS-CoV-2 virus was present on its property and that it was not entitled to recover from Vigilant because Another Planet's losses stemmed from civil authority shut-down orders, not because the virus caused "direct loss or damage to property." This dismissal constitutes error for several reasons.

First, Another Planet sufficiently alleged that SARS-CoV-2 was present in, on, and around insured premises, and that the virus's presence causes "direct loss or damage to property." A recent decision from the California Court of Appeal predicted precisely the scenario that led to Another Planet's losses, opining there would be coverage

under these exact circumstances. *Inns*, 71 Cal. App. 5th 688, 704. To the extent other decisions have held differently, they are not on point and should not be followed.[1] Also, while other insurance policies in other cases may not have been explicit that a virus like SARS-CoV-2 could cause the requisite property loss or damage, Vigilant's Policy expressly contemplates coverage for loss and damage to property—it excludes such losses from coverage under one part of the Policy (the liability coverage part), but not under the relevant property and business interruption coverage parts. Thus, while other courts may have decided that SARS-CoV-2 did not fall within other "all risks" policies' coverage grants, this Policy is different and gives rise to Another Planet's reasonable expectation of coverage for pandemic-related losses.

Second, because SARS-CoV-2 can cause the requisite property loss or damage to trigger the Policy's coverages, Another Planet has sufficiently pled entitlement to coverage for suspensions of operations at the behest of governmental orders, requiring nonessential businesses to

---

[1] In *United Talent Agency v. Vigilant Insurance Co.*, 77 Cal. App. 5th 821 (2022) ("*UTA*"), a different panel of the California Court of Appeal rejected the *Inns* court's reasoning, creating a split of appellate authority. As discussed below, *Inns*' reasoning is more consistent with decades of California jurisprudence.

close and Another Planet's customers and patrons to stay at home. The First Amended Complaint alleged in great detail the scientific evidence that Another Planet would present to carry its burden of proof, as well as the statements of public officials specifying that the shut-down orders were issued, in part, to prevent further property damage and loss caused by SARS-CoV-2.

Third, even had Another Planet not alleged that the virus was present on, in, and around its properties, the steps that Another Planet took to prevent it from spreading are compensable under longstanding mitigation doctrine and per the Policy's own terms. Keeping the virus out of and away from covered property reduced the potential for covered claims, thus entitling Another Planet to mitigation damages for the costs and consequences of those efforts. It matters not whether those actions were voluntarily undertaken by Another Planet or pursuant to orders of civil authority. *Cf. AIU Ins. Co. v. Superior Court,* 51 Cal. 3d 807 833 (1990) (recognizing that costs incurred by government to prevent damage from pollutants is cost that is "'mitigative' in character" "is not an uninsurable cost of doing business").

Fourth, the district court dismissed the First Amended Complaint by resolving issues of disputed facts, namely whether SARS-CoV-2 was present in, on, and around insured premises and whether it caused Another Planet's losses. This constitutes an impermissible overstep. The First Amended Complaint is rich with factual allegations, and had the district court accepted them as true, it could not have dismissed Another Planet's case. Instead, the district court applied a "probability standard" that the U.S. Supreme Court specifically cautioned courts to avoid when deciding a motion to dismiss. By applying that erroneous standard and dismissing the case in its entirety—without even mentioning Another Planet's causes of action for bad faith, fraud, and declaratory relief—the district court deprived Another Planet of its right to prove the facts alleged and demonstrate entitlement to relief under this Policy.

For all these reasons, discussed in greater detail below, the judgment should be reversed and the First Amended Complaint reinstated in its entirety.

# ARGUMENT

## I. Standard of Review

On appeal, the district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 866 (9th Cir. 2013); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 526 (9th Cir. 2008). In undertaking this review, this Court must accept Another Planet's well-pled allegations as true, construe all factual allegations in the light most favorable to Another Planet, and reverse the district court's judgment unless the Court determines that Another Planet's complaint fails to "'state a claim to relief that is plausible on its face.'" *Carlin*, 705 F.3d at 866-67. "Dismissal for failure to state a claim is proper only 'if it appears beyond doubt' that the non-moving party 'can prove no set of facts which would entitle him to relief.'" *Leadsinger*, 512 F.3d at 526.

This Court also reviews *de novo* the district court's interpretation of state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *Wash. Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 692 (9th Cir. 1989). Thus, this Court should independently analyze

the facts and the law, as well as the district court's application of California law to the facts. *Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1102 (9th Cir. 1989); *see also Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999) (California state law applies to California contract dispute). In conducting a *de novo* review, no form of appellate deference to the district court's decision is acceptable. *Salve*, 499 U.S. at 238; *Rabkin v. Ore. Health Scis. Univ.*, 350 F.3d 967, 970 (9th Cir. 2003).

## II. <u>Principles of Policy Interpretation</u>

Under California law, the fundamental goal of interpreting insurance policies, as with all contract interpretation, is to ascertain and effectuate the intention of the parties. Cal. Civ. Code § 1636; *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990); *accord Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180, 1188 n.3 (9th Cir. 2000) (objectively reasonable expectations of parties are touchstone for interpreting insurance contracts under California law); *see also* Cal. Civ. Proc. Code § 1859. Under California law, an insured under an all-risk property insurance policy, such as the Policies at issue here, has the threshold burden of proving a loss within the policy's insuring clause. *See*

*Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989)

(insured bears burden of showing "that an event falls within the scope of

basic coverage under the policy"). "The burden on the insured in this

situation is usually minimal, typically requiring proof only that the

insured suffered a 'direct physical loss' (or 'accidental direct physical

loss') while the policy was in effect." Croskey, et al., *Cal. Prac. Guide: Ins.*

*Litig.* § 6:253.1 (2020). Indeed, one California court has even stated that

an insured under an all-risk policy "*has no burden of proof,*" adding that

"[i]n effect, there is a presumption of coverage, which the insurer has the

burden to rebut by proving that the claim falls within a specific policy

exclusion." *Travelers Cas. & Sur. Co. v. Superior Court*, 63 Cal. App. 4th

1450, 1454 (1998).

　　If contractual language is clear and explicit, it governs. Cal. Civ.

Code § 1638. However, a court cannot ignore the possible existence of

extrinsic evidence that could show policy language that appears clear on

its face is, in fact, susceptible to more than one reasonable

interpretation. *See, e.g.,* section III.B, *infra* (providing detailed

discussion).

Furthermore, coverage grants in insurance policies are interpreted broadly to afford the greatest possible protection to insureds. *See Garvey*, 48 Cal. 3d at 406. In interpreting insurance policies, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641; *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1036 (2002) (applying "the very fundamental principle that policy language be so construed as to give effect to every term").

However, if the policy's language is ambiguous, its words are to be construed in the insured's favor, consistent with the insured's reasonable expectations. *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763 (2001); *AIU*, 51 Cal. 3d at 822. When language is ambiguous, the court must either interpret the provision liberally, if it grants coverage, or narrowly, if it constricts coverage, to meet the objectively reasonable expectations of the insured. *Id.* "[T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.'" *Travelers Prop. Cas. Co. of Am. v. Superior Court,* 215 Cal. App. 4th 561, 575 (2013). A

28

restriction on coverage is not sufficiently conspicuous unless it is "positioned in a place and printed in a form which would attract a reader's attention." *Ponder v. Blue Cross of S. California,* 145 Cal. App. 3d 709, 719 (Ct. App. 1983).

In fact, the California Supreme Court has "declared time and again 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.'" *Haynes v. Farmers Ins. Exch.,* 32 Cal. 4th 1198, 1204 (2004). Therefore, "coverage exclusions and limitations are 'strictly construed against the insurer and liberally interpreted in favor of the insured.'" *Meraz v. Farmers Ins. Exch.,* 92 Cal. App. 4th 321, 324 (2001).

Consistent with these principles, even if there are conflicting interpretations of a policy provision, an insured's reasonable interpretation controls. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 655 (2003) ("even if [an insurer's] interpretation is considered reasonable, it would still not prevail, for in order to do so it would have to establish that its interpretation is the *only* reasonable one"); *see also State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 202-03 (1973) ("we must nonetheless affirm the trial courts' finding of coverage so long

as there is any other reasonable interpretation under which recovery would be permitted in the instant cases"); *accord Ticketmaster, LLC v. Ill. Union Ins. Co.*, 524 F. App'x 329, 331-32 (9th Cir. 2013) (rejecting application of exclusion because insurer "failed to satisfy its burden of showing that . . . its interpretation . . . is the *only* reasonable one"). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." *MacKinnon*, 31 Cal. 4th at 648.

Also, an insurer's "failure to use available [exclusionary] language . . . gives rise to the inference that the parties intended not to so limit coverage." *Fireman's Fund Ins. Cos. v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001). Thus, exclusionary language—and the absence thereof—must be considered.

## III. <u>Another Planet Sufficiently Alleged That SARS-CoV-2 Was Present and Caused Direct Loss or Damage to Property</u>

California courts, including the California Supreme Court, have long held that microscopic substances that do not cause visible alterations to property may still cause direct loss or damage. *AIU*, 51 Cal. 3d at 842; *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 87-94 (1996).

30

In *AIU*, the California Supreme Court examined whether comprehensive general liability policies provided coverage for cleanup costs incurred pursuant to CERCLA and related state and federal environmental laws. 51 Cal. 3d at 813-14. The policies required the insurers to pay for "'sums which the insured becomes legally obligated to pay because of property damage.'" *Id.* at 821. Several agencies subsequently filed lawsuits against the insured that alleged that it was "responsible for the contamination of 79 different hazardous waste disposal sites, groundwater beneath the sites, aquifers beneath adjoining property, and surrounding surface waters." *Id.* at 815. The court then disagreed with the holdings from several courts holding that "government claims for injunctive relief and reimbursement of costs incurred in cleaning up disposal sites and water surrounding them are not covered by CGL policies, because such claims do not allege 'property damage.'" *Id.* at 842. On the contrary, the court concluded that "[c]ontamination of the environment satisfies this requirement" of property damage. *Id.*

The California Court of Appeal reached a similar conclusion in *Armstrong*. The policies in *Armstrong* defined property damage to

include both "physical injury to . . . tangible property" and "loss of use of tangible property." 45 Cal. App. 4th at 88. The trial court had concluded that "all claims, whether for release of asbestos fibers or for mere installation of ACBM, are for covered 'property damage.'" *Id*. The trial court concluded that the "release of asbestos fibers is an act of contamination that amounts to physical injury and, even without a release of fibers, the diminished value resulting from the incorporation of ACBM in a building constitutes property damage." *Id*. The court of appeal agreed and held, "The Injury is Physical," pointing out that "courts have held that contamination of buildings and their contents from released fibers constitutes a physical injury and, hence, property damage covered under the terms of the insurance policies." *Id*. at 90.

It is important to emphasize here that unlike many other cases that turned on different policy language—namely, "direct *physical* loss of or damage to property"—this Policy only requires "direct loss or damage to property." Thus, while other courts may have felt uneasiness with the physical properties of the virus, such as how long it can survive on surfaces and in airspaces, or how it can be cleaned or physically removed from surfaces or airspaces, or how it may or may not physically

alter surfaces or airspaces, those concerns do not arise under this Policy.[2] All that is required is "direct loss or damage." Under *Armstrong*'s logic, both these preconditions to coverage are met.

But even if some physicality were required to constitute a "direct loss . . . to property," Another Planet's claim for coverage still has merit. A California Court of Appeal likewise has provided some explanation as to what constitutes "physical loss." In *MRI Healthcare Center, Inc. v. State Farm General Insurance Co.*, 187 Cal. App. 4th 766, 767-90 (2010), the insured submitted a claim under a business interruption policy as the result of damage to its MRI machine. The insured's landlord undertook repairs on the roof of the room housing the MRI machine. In order to undertake these repairs, the MRI machine had to be demagnetized, or "ramped down." However, after the machine was "ramped down," it failed to ramp back up. *Id.* at 770. The policy at issue insured for "accidental direct physical loss" to property. *Id.* at 770-71.

---

[2] In any event, Another Planet's allegations that SARS-CoV-2 does alter property, including surfaces and airspace, are at least plausible. Courts cannot make determinations to the contrary at the pleading stage, particularly in the face of allegations of the science establishing such physical alterations and statements by government officials that the virus "damages" property.

The trial court granted the insurer's motion for summary judgment and denied the insured's motion, holding in pertinent part that the insured could not establish that there was an "accidental direct physical loss" under the policy. *Id.* at 776.

The court of appeal affirmed. In doing so, it provided its interpretation of "direct physical loss":

> A direct physical loss "contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." The word "direct" used in conjunction with the word "physical" indicates the change in the insured property must occur by the action of the fortuitous event triggering coverage. In this sense, "direct" means "'[w]ithout intervening persons, conditions, or agencies; immediate[.]'" For loss to be covered, there must be a "distinct, demonstrable, physical alteration" of the property.
>
> . . . .
>
> For there to be a "loss" within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been "damaged" within the common understanding of that term.

*Id.* at 779-80 (citations omitted).

34

A plain reading of Another Planet's allegations demonstrates that Another Planet sufficiently alleged the impact of an external force (SARS-CoV-2) and both direct physical damage and direct physical loss. As detailed above, Another Planet alleged that (1) SARS-CoV-2 was present on its properties; (2) SARS-CoV-2 physically alters and damages surfaces by attaching to them and turning them into fomites, thus enabling them to transmit disease; (3) SARS-CoV-2 aerosols permeate airspaces where the virus is present, thus altering and damaging airspace on Another Planet's property; and (4) Another Planet's properties were transformed into an unsatisfactory state by way of the virus, pandemic, and civil authority orders. Under the guidance of California courts, these allegations sufficiently allege that Another Planet suffered direct physical loss or damage at its properties.

The district court also ignored the rule that "physical loss" can occur if property is not usable for its intended purpose. *See Hughes v. Potomac Ins. Co. of D.C.,* 199 Cal. App. 2d 239, 248-49 (1962) (a "dwelling building" that itself suffered no structural damage but was rendered "completely useless to its owners" suffered real and severe

35

damage)[3]; *Strickland v. Fed. Ins. Co.*, 200 Cal. App. 3d 792, 799-801 (1988) (rejecting notion that an "insured [must] absorb the dangers inherent in living atop a land mass which is close to the point of failure" and holding that such dangers are "the type of risk [a property insurer is] paid to assume"); *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) ("[T]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating [the interpretive rule] that every word be given a meaning.").

## A. Recent California Decisions Do Not Warrant Affirming the District Court's Decision.

Since the district court rendered its decision, several California Court of Appeal decisions have been issued regarding insurance for losses associated with COVID-19. While all were in favor of insurers, none supports dismissal of Another Planet's claims here.

---

[3] The *Hughes* court also issued a warning that Vigilant ignored, stating, "Common sense requires that a policy should not be . . .interpreted" [to deny coverage for loss or damage unless some there were some detectable tangible injury to the physical structure itself] "in the absence of a provision specifically limiting coverage in this manner." *Id.*

In *Inns*, the insured argued that the presence of SARS-CoV-2 constitutes property damage because it transformed the property from a safe condition to a dangerous condition. However, the court found that the insured did not establish the requisite causal link between SARS-CoV-2 and the property damage. Rather, "it was the presence of the virus *throughout* San Mateo and Monterey Counties—not the presence of the virus *specifically* on Inns' premises—that gave rise to the Orders, leading to Inns' suspension of operations." *Inns*, 71 Cal. App. 5th at 699. The court observed that although the insured alleged that (1) the virus was "a physical force," (2) the virus was "present on its premises," and (3) the insured "suspended its operations during the pandemic, presumably concluding that its premises were uninhabitable or unsuitable for their intended use," the court held that these allegations did not suffice because the insured "cannot reasonably allege that the presence of the COVID-19 virus on its premises is what *caused* the premises to be uninhabitable or unsuitable for their intended purpose." *Id.* at 703.

However, the court identified a scenario under which the insured could allege that its property was damaged:

> [I]t could be possible, in a hypothetical scenario,
> that an invisible airborne agent would cause a
> policyholder to suspend operations because of
> direct physical damage to property. However, the
> complaint here simply does not describe such a
> circumstance because it bases its allegations on
> the situation created by the Orders, which were
> not directed at a particular business
> establishment due to the presence of COVID-19
> on that specific business's premises."

*Id.* at 704. The court even more specifically presented a hypothetical

wherein a restaurant could shut down as the result of a positive covid

test, or a restaurant could allege loss or damage akin to that caused by

a chemical contaminant. *Id.* at 704-05.

The *Inns*' hypothetical is Another Planet's reality. Another Planet

alleged the presence of SARS-CoV-2, that its presence caused damage to

the property, and that its presence prevented or impaired use of the

property. 3-E.R.-380 ¶ 5, 398-406 ¶¶ 53-79. The alleged loss or damage

is causally connected to the alleged presence of the virus. 3-E.R.-406 ¶

79.

In *UTA*,[4] the court rejected the *Inns* court's conclusion that there

could be coverage in the hypothetical scenario, thus creating a split in

---

[4] As of the time of the filing of this brief, the Second District Court of
Appeal also rendered its opinion in *Musso & Frank Grill Co., Inc. v.
Mitsui Sumitomo Insurance USA Inc.*, 77 Cal. App. 5th 753 (2022).

California authority. The insured in *UTA* argued that its allegations were different from *Inns* in that the *UTA* insured alleged that the "physical presence of the virus on [its] insured premises constituted 'physical damage.'" *UTA*, 77 Cal. App. 5th at 834. The insured in *UTA* likewise alleged that the virus spreads through aerosolized droplets traveling through the air as well as through fomite transmission, and that the presence of the virus causes damage by requiring remedial measures to eliminate the presence of the virus. *Id.* The *UTA* insured did not allege, however, that it was required to undertake any remedial measures. *Id.* Despite these allegations, the *UTA* court concluded that the presence of the virus does not constitute direct physical damage or loss. The *UTA* court stated that "a discussion of a hypothetical scenario is not a statement of California law, and UTA cites no other case suggesting that such a scenario demonstrates 'direct physical loss or

---

Like in *Inns* and *UTA*, the *Musso* court of appeal affirmed the Superior Court's order sustaining the insurer's demurrer. However, unlike Another Planet, the *Musso* insured affirmatively stated that its losses were caused by public health orders, not damage to its property, and its policy included a virus exclusion. Accordingly, the holding in *Musso* is not controlling here.

damage.'"[5] *Id.* at 839. The court also noted that the insured "has not

alleged that its properties required unique abatement efforts to

eradicate the virus." *Id.*

The *Inns* court's recognition of coverage in a situation like Another

Planet's is a more accurate representation of California law. California

courts have long recognized that microscopic damage and alterations

may, in certain scenarios, alter property or render property unusable in

a manner sufficient to establish "direct physical loss or damage."

Moreover, Another Planet's allegations and the judicially noticed facts

clearly bring Another Planet within the *Inns* court's example of when

coverage should be afforded. Accordingly, Another Planet sufficiently

alleged direct physical loss or damage to property.

## B. The Exclusion for Virus-Related Liability Shows that Viruses Can Cause Direct Loss of or Damage to Property

Under California law, the contractual intent embodied in an

insurance policy is ascertained not only by the words that the insurer

---

[5] The *UTA* court's disagreement with the *Inns* court indicates a split in California appellate authority on this issue. That is the precise kind of split that the California Supreme Court should resolve. Therefore, it may be appropriate for this Court to certify the issue to the California Supreme Court for its consideration. *See* Cal. R. Ct. 8.548.

elected to include in the policy, but also by which words the insurer could have used but did not. *See Fireman's*, 94 Cal. App. 4th at 852 (collecting cases). Thus, reading provisions "side by side" to see what words Vigilant used elsewhere provides an interpretive "key" to arrive at the Policy's intent. *AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25, 28-29 (1st Cir. 2018) (Souter, J.).

Vigilant's Policy provides both first-party coverage for Another Planet's own property and business losses, as well as third-party coverage for losses suffered by others because of Another Planet's acts or omissions. 3-E.R.-396 ¶ 49. The third-party coverage applies if the property of another is damaged. *See id.* As to that coverage, however, Vigilant included an exclusion for "Biological Agents," defined to include "viruses and other pathogens." Thus, the Policy's words show that Vigilant understood that "viruses and other pathogens" could cause damage to property. As the Wisconsin Supreme Court observed, "If the insuring agreement never confers coverage for this type of liability as an original definitional matter, then there is no need to specifically exclude it. Why would [an insurer] exclude [a type of damage] if the

damage could never be considered [covered] in the first place?" *Am.*
*Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis. 2d 16, 43 (2004).

But the Policy's third-party coverage is not at issue in this appeal;
only the first-party coverages are. *Vigilant did not include an exclusion*
*for damage caused by viruses in the first-party coverages.* Under
California law, "an insurance company's failure to use available
language to exclude certain types of liability gives rise to the inference
that the parties intended not to so limit coverage." *Fireman's*, 94 Cal.
App. 4th at 852. Thus, a reasonable interpretation of the Policy is that
viruses can cause property loss and damage, and because the Court
must give effect to reasonable interpretations that favor coverage,
regardless of the existence of other reasonable interpretations, the
district court erred in dismissing Another Planet's case. *MacKinnon*, 31
Cal. 4th at 655.

The First Amended Complaint also contains allegations that
demonstrate that the parties intended the Policy to pertain to losses
caused by viruses. In addition to the long history of Vigilant, its parent
company (Chubb), and the insurance industry in general all recognizing
that a pandemic could create substantial liabilities under policies just

42

like the one at issue now, *see* 3-E.R.384-89¶¶ 19-25, 391¶ 30, the

Insurance Services Office (ISO) developed a standard virus exclusion for

these "all risks" policies. 3-E.R.-390-91 ¶¶ 26-27. Another Planet does

not argue that Vigilant's failure to include that standard exclusion in

the Policy somehow creates coverage that would otherwise not exist.

Instead, Another Planet argues that the very existence of the exclusion

informs an insured's reasonable expectation that viruses are included in

"all risks" of loss or damage to property that the Policy was intended to

cover.

Under California law, it is not only appropriate, but essential, for

courts to look to this type of drafting to ascertain the Policy's intent. As

the California Supreme Court has explained, "rational interpretation [of

contract language] requires at least a preliminary consideration of all

credible evidence offered to prove the intention of the parties." *Pac. Gas*

*& Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39–

40 (1968). Thus, "[e]ven if a contract appears unambiguous on its face, a

latent ambiguity may be exposed by extrinsic evidence . . . ." *Dore v.*

*Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) (citation omitted);

*accord Stephens v. City of Vista*, 994 F.2d 650, 656–57 (9th Cir. 1993)

("[E]ven if a contract appears clear on its face, 'the court is required to engage in preliminary consideration of extrinsic evidence to see whether it creates an ambiguity.'" (citation omitted)).

For example, in *Pardee Construction Co. v. Insurance Co. of the West*, the California Court of Appeal looked to subsequent drafts of ISO standard forms to ascertain that insurance policy's meaning, basing its decision to hold against the insurer because those drafts "evince . . . express alternative limiting language that could have been employed." 77 Cal. App. 4th 1340, 1359 (2000).

It was error for the district court to disregard the exclusion for property losses caused by viruses in the Policy's third-party coverage, the long history of insurers' public statements acknowledging that viruses could cause covered losses, and the ISO form virus exclusion that all create a reasonable expectation that Another Planet's "all risks" Policy would cover losses caused by viruses unless otherwise excluded. At the very least, this creates an ambiguity that must be resolved in favor of coverage, *Safeco*, 26 Cal. 4th at 763, especially when considering an "all-risks" policy, *Travelers*, 63 Cal. App. 4th at 1454, and

44

still more so when considering a Rule 12(b)(6) motion. *Leadsinger*, 512 F.3d at 526.

## IV. <u>Another Planet Sufficiently Alleged Entitlement to Civil Authority Coverage</u>

Because SARS-CoV-2's presence on surfaces and in airspaces constitutes "direct loss or damage to property," Another Planet has adequately alleged that it is entitled to coverage because orders of civil authority. Specifically, the First Amended Complaint claims that (i) Another Planet suffered losses because of state and local civil authority orders impairing its operations, (ii) those orders prohibited access to AP's property, and (iii) those orders were issued due to the property loss and damage caused by the presence of SARS-CoV-2 throughout California, including within the vicinity of the insured locations. 3-E.R.-380 ¶ 5, 398 ¶ 53, 401-03 ¶¶ 58, 61, 64, 405 ¶¶ 71 & 72.

The Policy does not define "prohibition" or "access." They must be given their plain meaning. According to one dictionary,[6] "prohibit" is "to

_____

[6] In determining the everyday meaning of undefined policy terms, often courts look to dictionaries. *See*, *e.g.*, *Jordan v. Allstate Ins. Co.*, 116 Cal. App. 4th 1206, 1216 (2004) ("It is well settled that in order to construe words in an insurance policy in their 'ordinary and popular sense,' a court may resort to a dictionary.").

forbid by authority" and "to prevent from doing something." *Prohibit*,

Merriam-Webster Online Dictionary (Jan. 18, 2021). To "access" means

"to be able to use, enter, or get near." *Access,* Merriam-Webster Online

Dictionary (Mar. 30, 2021).

The governing civil authority orders required that individuals stay

home and that businesses cease non-essential operations. *See* 3-E.R.-

401 ¶ 58. Given the clear language of the orders, Another Planet alleges

that it had to "completely suspend their business operations," and its

"patrons, would-be patrons, other third parties" were "prohibit[ed] . . .

from accessing" Another Planet's premises. *See* 3-E.R.-405 ¶¶ 71, 72.

Put another way, Another Planet's employees, clients, and customers

were "forbid[den] by authority" from leaving their homes and thus

unable to "use, enter, or get near" Another Planet's premises. Thus, the

orders clearly "prohibited access" to Another Planet's property. Given

that SARS-CoV-2 causes direct loss or damage to property, these orders

were explicit in their aim, in part, to limit property "damage . . . and

property loss." 3-E.R.-403 ¶ 64. Thus, the First Amended Complaint

plainly states that it suffered losses because of civil authority orders

that prohibited access to its premises because of property damage and

46

loss caused by the presence of SARS-CoV-2 in and around its properties. That is all that is needed to state a plausible entitlement to relief, and the district court erred by holding to the contrary.

## V.   **Another Planet Sufficiently Alleged Entitlement to Mitigation Damages**

At the core of the district court's decision was a deep skepticism that Another Planet could prove that SARS-CoV-2 was, more likely than not, present on, in, and around insured locations. *See* 4-E.R.-785 ("It is difficult to understand how Another Planet can allege with a straight face that the virus was actually present on its facilities' surfaces at the time of the shutdowns. That seems unknowable."). Never mind that resolving that factual question on the pleadings is clear error, even if Another Planet had not alleged the actual presence of SARS-CoV-2, its losses suffered as a result of the necessary suspension of its business would be recoverable as necessary mitigation expenses. *See* 3-E.R.-405 ¶ 77, 407 ¶ 86. "An insurer is liable . . . [i]f a loss is caused by efforts to rescue the thing insured from a peril insured against." Cal. Ins. Code § 531. This statute codifies "the duty implied in law on the part of the insured to labor for the recovery and restitution of damaged or detained property and it contemplates a correlative duty of

47

reimbursement separate from and supplementary to the basic insurance contract." *Young's Mkt. Co. v. Am. Home Assurance Co.*, 4 Cal. 3d 309, 313 (1971). When an insured prevents a threatened loss, it "acts for the benefit of the insurer," giving rise to the insurer's duty "to reimburse the insured for prevention and mitigation expenses." *S. Cal. Edison Co. v. Harbor Ins. Co.,* 83 Cal. App. 3d 747, 757 (1978); *see also AIU*, 51 Cal. 3d at 832–33 & n.15 (rejecting argument that actions "prophylactic in nature" "cannot be the subject of insurance").

The Policy itself also requires Another Planet to prevent imminent loss, and expressly covers costs to do so. *See* 3-E.R.-458. Per those provisions, Another Planet is required to "[t]ake every reasonable step to protect the covered property from further loss or damage." 3-E.R.-559.

Had Another Planet not closed its properties, SARS-CoV-2 would have been present on and in the property. By closing its properties, Another Planet avoided covered property loss and damage, as well as potential third-party claims. *See Globe Indem. Co. v. State of California*, 43 Cal. App. 3d 745, 748 (1974) (fire suppression costs incurred to prevent fire from spreading to others' property covered mitigation);

*accord AIU*, 51 Cal. 3d at 833 (environmental response costs "incurred largely to prevent damage previously confined to the insured's property from spreading . . . are 'mitigative'").

Accordingly, established mitigation doctrine and the Policy's plain terms required the measures taken to prevent the virus from causing further damage and covered losses.

The district court dismissed this claim for relief without discussion, but because SARS-CoV-2 can cause direct loss and damage to property, Another Planet is entitled to compensation for the steps it took to prevent further covered losses.

## VI.   <u>Another Planet Should Be Allowed to Present Its Case</u>

The district court dismissed all of Another Planet's causes of action by deciding that (i) the presence of SARS-CoV-2 on surfaces and in air spaces never could constitute "direct loss or damage to property" as a matter of law, and (ii) it would be difficult for Another Planet to prove that the virus was present on, in, and around its properties. Regarding the former, as discussed above, the district court misapplied basic rules of insurance policy interpretation and ignored reasonable

49

inferences that the Policy was, in fact, intended to cover damages caused by viruses like SARS-CoV-2.

As to the latter, speculative views on what evidence might be developed and offered is no reason to dismiss a case on the pleadings. Another Planet alleged copious scientific evidence pointing to the virus's ubiquity, high rate of transmission, and our incapability to detect and appreciate the full number of infections and rapidity of its spread. 3-E.R.-397-401 ¶¶ 51-57, 405 ¶¶ 75, 77. It was error to accept Vigilant's unsupported view of how the virus affects property at the pleadings stage because if there is any dispute about the accuracy of Another Planet's allegations, that dispute involves factual questions that necessarily will rely on scientific evidence and expert testimony. As one district court explained, Federal Rule of Evidence 701 requires expert testimony to assist the trier of fact when an issue turns on complex scientific determinations that do not fall within the ken of laypersons and are beyond common perception or observation. *Hovespian v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 13213900, at *10 (C.D. Cal. Jan. 12, 2011) (collecting authorities).

Moreover, while a complaint must contain allegations of fact, and not threadbare conclusions, to survive a motion to dismiss, "[t]he plausibility standard is not akin to a 'probability requirement'"; all it needs to do is provide sufficient facts for the court to infer a reasonable potential for liability, *if the facts pled are true. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court erred when it succumbed to its own doubts as to whether the virus's presence and effects could be ascertained. It might be difficult to prove, but that is up to Another Planet to do at a later stage in the litigation. And while Vigilant is entitled to test the sufficiency of Another Planet's evidence—scientific or otherwise—at the appropriate time, *cf. Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993), it is not entitled to have judgment against Another Planet just because it disagrees with those well-pled allegations. The time for any dispute to be resolved is not on a motion to dismiss.

Because the district court dismissed all causes of action based on these two flawed findings, the First Amended Complaint should be reinstated in full.

## VII. <u>Conclusion</u>

Yes, it is absolutely true there are many courts, including this Court, that have held against insureds seeking coverage for pandemic-related losses. But those cases are not this case. This Policy's plain terms show that the parties knew that it would apply to property losses caused by viruses, and while the Policy excluded coverage for third-party claims arising from viruses, it did not do the same for Another Planet's own losses. The First Amended Complaint contains extensive allegations of how SARS-CoV-2 caused covered losses under multiple coverages, as well as how Vigilant acted in bad faith while trying to avoid the immense liabilities that it knew would arise under policies just like Another Planet's in the event of a global pandemic. Had the district court accepted those allegations as true, the case should have moved forward. Instead, it decided complex questions of fact based on a gut feeling, rather than applying decades of jurisprudence that support Another Planet's entitlement to relief. For all of these reasons, the judgment should be reversed, and the First Amended Complaint reinstated in its entirety.

52

DATED: June 3, 2022        PASICH LLP

By:     */s/ Kirk Pasich*
      Kirk Pasich
      Nathan M. Davis
      Arianna Young

      Attorneys for Plaintiff –
      Appellant Another Planet
      Entertainment, LLC

## <u>CERTIFICATION OF WORD COUNT</u>

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Opening Brief of Appellant Another Planet Entertainment, LLC is proportionately spaced, has a typeface of 14 points or more, and contains 9,822 words (and, therefore, is within the permissible limit of 14,000 words).

DATED: June 3, 2022         PASICH LLP

By:     */s/ Kirk Pasich*
       Kirk Pasich

       Attorneys for Plaintiff –
       Appellant Another Planet
       Entertainment, LLC

54

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellant Another Planet Entertainment, LLC is not aware of any related case currently pending before this Court.

DATED: June 3, 2022         PASICH LLP

By:     *Kirk Pasich*
_____
Kirk Pasich

Attorneys for Plaintiff –
Appellant Another Planet
Entertainment, LLC

**ADDENDUM**

## ADDENDUM

## DESCRIPTION                                    PAGE

**Statutes**

California Civil Code § 1636                        A-1

California Civil Code § 1638                        A-2

California Civil Code § 1641                        A-3

California Code of Civil Procedure § 1859           A-4

California Insurance Code § 531                      A-5

**Rules**

California Rules of Court 8.548                      A-6

West's Annotated California Codes
    Civil Code (Refs & Annos)
        Division 3. Obligations (Refs & Annos)
        Part 2. Contracts (Refs & Annos)
        Title 3. Interpretation of Contracts (Refs & Annos)

West's Ann.Cal.Civ.Code § 1636

§ 1636. Mutual intention to be given effect

Currentness

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

**Credits**
(Enacted in 1872.)

Notes of Decisions (576)

West's Ann. Cal. Civ. Code § 1636, CA CIVIL § 1636
Current with urgency legislation through Ch. 3 of 2021 Reg.Sess

A-1

West's Annotated California Codes
    Civil Code (Refs & Annos)
        Division 3. Obligations (Refs & Annos)
           Part 2. Contracts (Refs & Annos)
                Title 3. Interpretation of Contracts (Refs & Annos)

West's Ann.Cal.Civ.Code § 1638

§ 1638. Ascertainment of intention; language

Currentness

The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

**Credits**

(Enacted in 1872.)

Notes of Decisions (383)

West's Ann. Cal. Civ. Code § 1638, CA CIVIL § 1638
Current with urgency legislation through Ch. 3 of 2021 Reg.Sess

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

  © 2021 Thomson Reuters. No claim to original U.S. Government Works.  

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 3. Obligations (Refs & Annos)
      Part 2. Contracts (Refs & Annos)
        Title 3. Interpretation of Contracts (Refs & Annos)

West's Ann.Cal.Civ.Code § 1641

§ 1641. Whole contract, effect to be given

Currentness

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

**Credits**
(Enacted in 1872.)

Notes of Decisions (275)

West's Ann. Cal. Civ. Code § 1641, CA CIVIL § 1641
Current with urgency legislation through Ch. 3 of 2021 Reg.Sess

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
　Code of Civil Procedure (Refs & Annos)
　　Part 4. Miscellaneous Provisions (Refs & Annos)
　　　Title 1. Of the General Principles of Evidence

West's Ann.Cal.C.C.P. § 1859

§ 1859. Construction of statutes or instruments; intent

Currentness

In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.

**Credits**
(Enacted in 1872.)

Notes of Decisions (1930)

West's Ann. Cal. C.C.P. § 1859, CA CIV PRO § 1859
Current with urgency legislation through Ch. 3 of 2021 Reg.Sess

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Insurance Code (Refs & Annos)
    Division 1. General Rules Governing Insurance (Refs & Annos)
      Part 1. The Contract (Refs & Annos)
        Chapter 6. Loss
          Article 2. Causes of Loss

West's Ann.Cal.Ins.Code § 531

§ 531. Rescue from peril insured against

Currentness

An insurer is liable:

(a) Where the thing insured is rescued from a peril insured against, and which would otherwise have caused a loss, if, in the course of such rescue, the thing is exposed to a peril not insured against, and which permanently deprives the insured of its possession, in whole or in part.

(b) If a loss is caused by efforts to rescue the thing insured from a peril insured against.

**Credits**
(Stats.1935, c. 145, p. 510.)

West's Ann. Cal. Ins. Code § 531, CA INS § 531
Current with urgency legislation through Ch. 3 of 2021 Reg.Sess

**End of Document** · © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case: 21-16093, 06/06/2022, ID: 12464881, DktEntry: 28, Page 63 of 65

Rule 8.548. Decision on request of a court of another jurisdiction, CA ST APPELLATE...

---

West's Annotated California Codes
  California Rules of Court (Refs & Annos)
    Title 8. Appellate Rules (Refs & Annos)
      Division 1. Rules Relating to the Supreme Court and Courts of Appeal (Refs & Annos)
        Chapter 9. Proceedings in the Supreme Court (Refs & Annos)

Cal.Rules of Court, Rule 8.548
Formerly cited as CA ST A Rule 29.8

Rule 8.548. Decision on request of a court of another jurisdiction

Currentness

**(a) Request for decision**

On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California law if:

(1) The decision could determine the outcome of a matter pending in the requesting court; and

(2) There is no controlling precedent.

**(b) Form and contents of request**

The request must take the form of an order of the requesting court containing:

(1) The title and number of the case, the names and addresses of counsel and any unrepresented party, and a designation of the party to be deemed the petitioner if the request is granted;

(2) The question to be decided, with a statement that the requesting court will accept the decision;

(3) A statement of the relevant facts prepared by the requesting court or by the parties and approved by the court; and

(4) An explanation of how the request satisfies the requirements of (a).

**(c) Supporting materials**

Copies of all relevant briefs must accompany the request. At any time, the Supreme Court may ask the requesting court to furnish additional record materials, including transcripts and exhibits.

**(d) Serving and filing the request**

---

A-6

Case: 21-16093, 06/06/2022, ID: 12464881, DktEntry: 28, Page 64 of 65

Rule 8.548. Decision on request of a court of another jurisdiction, CA ST APPELLATE...

The requesting court clerk must file an original, and if the request is filed in paper form, 10 copies, of the request in the Supreme Court with a certificate of service on the parties.

**(e) Letters in support or opposition**

(1) Within 20 days after the request is filed, any party or other person or entity wanting to support or oppose the request must send a letter to the Supreme Court, with service on the parties and on the requesting court.

(2) Within 10 days after service of a letter under (1), any party may send a reply letter to the Supreme Court, with service on the other parties and the requesting court.

(3) A letter or reply asking the court to restate the question under (f)(5) must propose new wording.

**(f) Proceedings in the Supreme Court**

(1) In exercising its discretion to grant or deny the request, the Supreme Court may consider whether resolution of the question is necessary to secure uniformity of decision or to settle an important question of law, and any other factor the court deems appropriate.

(2) An order granting the request must be signed by at least four justices; an order denying the request may be signed by the Chief Justice alone.

(3) If the court grants the request, the rules on review and decision in the Supreme Court govern further proceedings in that court.

(4) If, after granting the request, the court determines that a decision on the question may require an interpretation of the California Constitution or a decision on the validity or meaning of a California law affecting the public interest, the court must direct the clerk to send to the Attorney General--unless the Attorney General represents a party to the litigation--a copy of the request and the order granting it.

(5) At any time, the Supreme Court may restate the question or ask the requesting court to clarify the question.

(6) After filing the opinion, the clerk must promptly send filed-endorsed copies to the requesting court and the parties and must notify that court and the parties when the decision is final.

(7) Supreme Court decisions pursuant to this rule are published in the Official Reports and have the same precedential effect as the court's other decisions.

A-7

Case: 21-16093, 06/06/2022, ID: 12464881, DktEntry: 28, Page 65 of 65

Rule 8.548. Decision on request of a court of another jurisdiction, CA ST APPELLATE...

**Credits**

(Formerly Rule 29.8, adopted, eff. Jan. 1, 2003. Renumbered Rule 8.548 and amended, eff. Jan. 1, 2007. As amended, eff. Jan. 1, 2016.)

Notes of Decisions (28)

Cal. Rules of Court, Rule 8.548, CA ST APPELLATE Rule 8.548
Current with amendments received through April 1, 2022.

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.