# Guttilla Murphy Anderson

5415 E. High Street, Suite 200
Phoenix, Arizona 85054
(480) 304-8300
Fax (480) 304-8301

Our No. 3286-001

January 6, 2023

**Via TrueFiling**

Honorable Chief Justice Patricia Guerrero
and Honorable Associate Justices
California Supreme Court
350 McAllister Street
San Francisco, California 94102-7303

    Re:    Letter in Support of Order Certifying Question to California Supreme Court dated Dec. 28, 2022 (9th Cir. No. 21-16093)
*Another Planet Entertainment, LLC v. Vigilant Ins. Co.*
Supreme Court Case No.: S277893

Honorable Chief Justice and Associate Justices of the California Supreme Court:

    Pursuant to Rule 8.548(e)(1) of the California Rules of Court, please accept this letter in support of the Ninth Circuit Court of Appeals December 28, 2022 Order certifying the following question to the California Supreme Court:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial insurance policy?

    While we believe the answer to this question should be an unequivocal "Yes", the Ninth Circuit requested guidance from this Court on this tremendously important insurance coverage question affecting insurance policyholders throughout the state of California and elsewhere.

    Insurance companies have made every effort to push courts into creating a wholly separate COVID-19 exception to ordinary rules of pleading and well-settled insurance coverage doctrines. The insurance companies argue that the COVID-19 virus causes damage and harm to people and not property and that insurers would face financial disaster if courts allow COVID-19 claims to proceed. But respectfully, the actual or potential presence of the COVID-19 virus should be considered no differently than the presence of similar substances causing damage to or depriving insurance policyholders of the use of their essential property.

    Well settled law on the actual presence of disease-causing organisms on property should lead this Court to answer the question above affirmatively. The actual or potential presence of the COVID-19 virus does indeed constitute "direct physical loss or damage to property." This Court can help the public return to the days of reasonable policy interpretation rather than carving out

Document received by the CA Supreme Court.

Honorable Chief Justice Patricia Guerrero
January 6, 2023
Page 2

artificial policy exclusions in insurance contracts and pushing courts to dismiss cases without a factual record or scientific assessment because the perceived cost of claims may be high.

Policyholders can and have alleged property losses or damages if the presence of a virus alters property even if the harm occurs at a microscopic level. *See, e.g., Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 296 Ca. Rptr. 3d. 777, 780 (App. 2022); *see also Huntington Ingalls Ind. V. Ace American Ins. Co.*, 2022 VT 45, 2022 WL 4396475 (2022). The presence of the COVID-19 virus at a property should be considered no differently than the presence of other harm-causing substances where the loss or damage occurs microscopically. Insurance companies should not be allowed to bypass their insurance contract obligations simply because so many businesses were harmed amidst the throws of the pandemic in 2020.

A scientifically based allegation that the actual presence of or risk that the COVID-19 virus is present on property should be construed as altering property in much the same way as courts have long construed the presence of smoke from wildfires, ammonia from accidental discharge, or the smell of cat urine rendering properties incapable of their intended use. *See Oregon Shakespeare Festival Ass'n v. Great American Insurance Co.*, 2016 WL 3267247, at *9 (D. Ore. June 7, 2016) ("smoke infiltration in theatre caused direct property loss or damage by causing the property to be uninhabitable and unusable for its intended purpose."); *Gregory Packaging, Inc. v. Travelers Property Casualty Co.*, 2014 WL 6675934, *15 (D.N.J. Nov. 25, 2014)(accidental discharge of ammonia, "property can be physically damaged, without undergoing structural alteration when it loses its essential functionality."); *Mellin v. Northern Security Insurance Co.*, 167 N.H. 544, 550-51 (2015): (cat urine odor inside condominium constitutes direct physical loss); *see also Goldberg v. Pac. Indem. Co.*, 2008 WL 508495, *3 (D. Ariz. Feb. 21, 2008) (carrier accepted property loss or damage claim involving smell of cat urine) (reconsideration granted and partially vacated on other grounds, 2008 WL 2008 WL 1775705, (D. Ariz., Apr. 17, 2008)).

Since the late 1950's, insurance companies have paid business interruption claims due to the presence of disease-causing agents such as a virus all of which do not tangibly alter property in a way that can be easily observed. *See, e.g., Am. Alliance Ins. Co. v. Keleket X-Ray Corp.*, 248 F.2d 920, 925 (6th Cir. 1957) (radioactive dust); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 54 (Colo. 1968) (gasoline fumes); *Pillsbury Co. v. Underwriters at Lloyd's, London*, 705 F. Supp. 1396, 1399 (D. Minn. 1989) ("undesirable organisms"); *Largent v. State Farm Fire & Cas. Co.*, 116 Or. App. 595, 597-98, 942 P.2d 445, 446 (Or. App. 1992) ("discharge of airborne vapor and particulates" resulting from tenant's illegal operation of methamphetamine laboratory); *Farmers Ins. Co. v. Trutanich*, 858 P.2d 1332, 1335 (Or. Ct. App. 1993) (methamphetamine odors); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 824-27 (3rd Cir. 2005) (e-coli); *Mehl v. The Travelers Home & Marine Ins. Co.*, 2018 U.S. Dist. Lexis 74552, *2 (E.D. Mo., 2018) (infestation of poisonous spiders).

Despite years of contrary precedent, insurance companies have consistently argued differently during the pandemic contending that because the COVID-19 virus damages people and not property, business interruption claims must fail. Yet, each of the compensable exposures identified above in cases dating back to the 1950's damage people and the property loss or damage flowing from such exposures are not readily observable. Other than the volume of claims exposure, nothing differentiates claims related to COVID-19 virus from these other recoverable claims.

Document received by the CA Supreme Court.

Honorable Chief Justice Patricia Guerrero
January 6, 2023
Page 3

Moreover, insurance companies have been well aware that insureds suffer loss or damage resulting from virus exposures. In 2006, an industry trade group, the Insurance Services Office recognized that losses from a pandemic likely would be construed no differently than losses from any of the exposures identified above. So the trade group issued an information circular to its insurance company members recommending they add a virus exclusion to property insurance policies following similar exposures to disease causing organisms back in 2006. https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf (last accessed Jan. 2, 2023). Why would trade groups make such recommendations if coverage does not exist for claims involving viruses that allegedly damage people and not property? The simple answer is that the presence of viruses can cause loss or damage to property and also infect people. During the pandemic in 2020, carriers publicly argued that the scope of losses flowing from a pandemic cannot be underwritten or insured against. Such arguments certainly helped enrich insurance carriers but certainly did nothing to interpret policyholder insurance policies consistently with the long line of cases and authorities dating back to the 1950's.

While the COVID-19 virus wreaked financial havoc on policy holders, it appears that insurance carriers have been enriched by their aggressive defense strategy disclaiming coverage and forcing many policyholders into bankruptcy. Without assistance from this Court defining COVID-19 virus exposure no differently from exposures to other well-established disease-causing organisms or smells, insurers will likely continue to be enriched by relying on new policy and legal arguments designed to carve-out exceptions for the COVID-19 virus inviting carriers to ignore ordinary rules of pleading and insurance contract construction.

Contrary to insurance industry claims, insurers do not appear to have faced their own financial Armageddon as a result of COVID-19 virus claims for coverage. Instead, carriers appear to have been financially enriched by arguing that loss or damage relating to the COVID-19 virus should be treated differently than loss or damage relating to the smell of cat urine, methamphetamine fumes, smoke or infestation of spiders. While the COVID-19 virus certainly has certainly wreaked financial havoc on businesses across the country, during the height of the pandemic in 2020 the insurance industry has actually enjoyed rates of return well above averages for the prior nine years. *See* REPORT ON PROFITABILITY BY LINE BY STATE IN 2020 at 31 (Comparison of Rates of Return on Net Worth), National Association of Insurance Commissioners, https://content.naic.org/sites/default/files/publication-pbl-pb-profitability-line-state.pdf (last accessed Jan. 2, 2022).

Why should the smell of cat urine, methamphetamine, or smoke damage or loss to property be considered any differently than exposure to the COVID-19 virus? California business properties have suffered loss in ways no differently from examples detailed above. Realistically, the only material difference among the cases described above and the COVID-19 virus relates to the number of affected businesses suffering loss or damage to property and not to any insurance contract terms.

Despite the existence of a long line of cases showing why COVID-19 virus related claims for coverage should be considered direct physical loss or damage to property, it is true that at least one California appellate court has addressed claims related to COVID-19 differently. In *United Talent Agency v. Vigilant Ins. Co.*, 293 Cal. Rptr. 3d 65, 68 (App. 2022), the insureds argued similarly that the presence of the COVID-19 virus must be considered no differently than exposure

Document received by the CA Supreme Court.

to asbestos, mudslides, smoke, or oil spills "although they later might be removed, cleaned, or remediated." We acknowledge that the California appellate court rejected this argument and the business interruption claim by concluding that exposure should be considered differently because the alleged presence of COVID-19 is "short lived." *Id.* at 76-77. But to suggest a time limitation on exposure forms the basis to disclaim coverage at the pleading stage ignores pleading standards and prevents discovery. Even with routine cleaning, were a business to remain open to the public during the height of the pandemic, pleadings have alleged that business would have faced a statistical certainty of repeated loss and damage for longer than a mere "short-lived" deprivation of property. At what point does a "short lived" deprivation become long enough to be considered a covered claim? Dismissal at the pleading stage prevents a litigant from establishing and proving the statistical certainty forming the basis for repeated and on-going business damage and loss. Respectfully, in *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, the California Court of Appeals correctly analyzed the claims made by the policyholder by allowing discovery and allowing the development of the factual record. 296 Cal Rptr. 3d 777, 780 (App. 2022); *see also Los Angeles Lakers, Inc. v. Federal Ins. Co.*, 2022 WL 16571193 *2 (D. Cal. Oct. 26, 2022) (construing conflicting authorities *United Talent* and *Marina Pacific* in a manner that allows insureds to proceed forward with its Complaint). And on January 5, 2023, the California Court of Appeals authorized for publication a decision similarly rejecting the *United Talent* "routine cleaning" approach to disclaim coverage. *Susha, Inc. v. Century-Nat'l Ins. Co.*, 2022 WL 18110247, * ___ (Cal. App. Dec. 14, 2022, authorized for publication Jan. 5, 2023). The *Shusha* court cited *Marina Pacific's* reasoning that "[T]he duration of exposure may be relevant to the measure of policy benefits [but] it does *not* negate coverage." (emphasis added). Respectfully, the court's recitations in these cases more accurately portrays California insurance law and we urge this Court to reject the Court's contrary reasoning in *United Talent Agency*.

As mentioned, the perceived risk of financial Armageddon raised by insurers across the country has not remotely been realized. Instead, insureds who pay premiums expecting protection should have the unfettered right to present interruption claims no matter whether the loss or damage to property flows from a disease-causing organism, the smell of cat urine, smoke, ammonia or methamphetamine or an actual collapsed roof. Moreover, the policyholders should be given sufficient opportunity, like in any other insurance coverage dispute, to raise facts and present scientific evidence to show why the COVID-19 virus related damage and loss claims were not "short-lived." By answering the certified question presented by the Ninth Circuit Court of Appeals affirmatively, this Court will provide guidance to policyholders and insurance companies alike that insurance contract interpretation does not vary simply because it relates to the COVID-19 virus. Answering the question affirmatively also resolves a perceived state-law conflict among appellate courts and returns to the days where policy language drafted by insurers and that does not contain definitions of the terms "loss" or "damage" must be read broadly.

Policyholders have the right to receive guidance on what coverage insurers will provide to them in times of need. Policyholders pay premiums believing that their insurers will step up and give them financial protection when they need it most so that they can stay in business or avoid financial peril. Insureds are inundated with insurance companies marketing their products on television using catchy slogans and well-known celebrities. Insurance companies march out a "LiMu Emu," a gecko lizard, and give consumers assurances that so long as you pay premiums, you will be treated "like a good neighbor" or you will receive protection from "mayhem." Policyholders have the right to expect that their insurer will actually step up and provide the

Document received by the CA Supreme Court.

coverage they bought when they need it most. Unfortunately, when mayhem hit back in 2020, too often, carriers have chosen to turn their back implying instead that they did not mean what they said. Many insureds have been forced into bankruptcy facing huge financial hurdles because their insurer did not step up and provide them with benefits they reasonably believed were covered by their insurance policy. Denying interruption claims does nothing to protect from pandemic "mayhem." Instead, this court should conclude that COVID-19 related claims are covered in much the same way as other interruption claims. The law applicable to COVID-19 related claims has been well-settled long ago. By answering the Ninth Circuit's question affirmatively, this Court can provide welcome guidance to insurers and insureds alike preventing the mayhem of uncertainty that currently exists in California state courts.

Our law firms collectively represent insurance policyholders on insurance coverage related disputes in California and across the country. We have also regularly been appointed as special counsel in cases involving insurance contract interpretation and various coverage disputes. Often our law firms are appointed by trustees as special counsel in Bankruptcy courts because businesses facing financial Armageddon have been left to file for bankruptcy. Likewise, we have submitted *amicus* briefs in other legal cases to help the court consider and resolve important legal questions and believe our input to be useful. We ask that you consider this letter in support of the important legal issues in the *Another Planet Entertainment, LLC v. Vigilant Ins. Co.* case in the same manner as you would consider an *amicus* brief in support of a particular position. In our respectful opinion, this Court should accept review of the certified question presented to the Court and answer the Ninth Circuit question affirmatively. We ask that you conclude that the actual or potential presence of the COVID-19 virus on an insured's premises constitutes "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy.

Thank you for consideration of this letter.

Very truly yours,

UDELMAN LAW FIRM, P.L.C.

Randall Udelman

GUTTILLA MURPHY ANDERSON, P.C.

Ryan W. Anderson

cc:  Kirk Pasich, attorney for Plaintiff and Appellant
Jacquelyn Heitman, attorney for Plaintiff and Appellant
Nathan M. Davis, attorney for Plaintiff and Appellant
Arianna M. Young, attorney for Plaintiff and Appellant
Jonathan D. Hacker, attorney for Defendant and Respondent
Douglas J. Collodel, attorney for Defendant and Respondent
Gretchen S. Carner, attorney for Defendant and Respondent
Brett C. Safford, attorney for Defendant and Respondent
Susan Koehler Sullivan, attorney for Defendant and Respondent

Document received by the CA Supreme Court.