

10880 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90024
KPasich@PasichLLP.com
NDavis@PasichLLP.com
(424) 313-7850

January 17, 2023

<u>Via Electronic Filing</u>

The Honorable Chief Justice Patricia Guerrero
    and the Honorable Associate Justices of the
Supreme Court of California
350 McAllister Street
San Francisco, CA 94102

RE:   *Another Planet Entertainment, LLC v. Vigilant Insurance Co.*
      Case No. S277893

Dear Chief Justice Guerrero and Associate Justices:

     We represent appellant Another Planet Entertainment, LLC, in the case referenced above. This case presents issues of enormous importance for purchasers of property insurance and business interruption insurance in California, and beyond. Pursuant to California Rule of Court 8.548(e), Another Planet urges the Court to accept the certification from the United States Court of Appeals for the Ninth Circuit and reinforce California's commitment to protecting the reasonable expectations of policyholders like Another Planet.

## I.    Background

     Another Planet is an independent concert producer and promoter based in Northern California. When the COVID-19 pandemic reached the United States, Another Planet was one of the thousands of California businesses whose operations had to cease as the SARS-CoV-2 virus spread throughout the nation.

     Respondent Vigilant Insurance Company—a subsidiary of Chubb Limited Group—sold Another Planet a Customarq Series Entertainment Insurance Program, which included "all-risks" insurance property and business interruption coverages for "direct physical loss or damage to" property (the "Policy").

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 2



For many years, Chubb made public statements, warning that their commercial insurance policies exposed them to significant potential losses in the event of a pandemic.[1] Nevertheless, when Another Planet timely submitted a claim under its Policy for its pandemic-related losses, Vigilant denied the claim without conducting even a cursory investigation.

On October 23, 2020, Another Planet sued Vigilant, joining hundreds of other businesses who turned to California's courts (and the federal courts in this state) to hold their insurers accountable for wrongfully withholding their insurance benefits. Another Planet's First Amended Complaint alleges causes of action for breach of the insurance Policy, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief, as well as four counts sounding in fraud and negligent misrepresentation for the many statements Chubb (and Vigilant) made regarding coverage for pandemic-related losses.

Unlike many other businesses that sought coverage for losses when government officials and agencies ordered them to close, Another Planet was one of a smaller group of insureds that made specific allegations that the SARS-CoV-2 virus was present in, on, and around insured property, and that the virus physically altered the airspace and surfaces with which it interacted, rendering the property unsafe and unusable. Unlike most businesses, Another Planet also alleged that Vigilant and other insurers long knew that pandemics presented a real risk of massive losses covered by their policies, knew that courts had held for decades that the presence of microscopic substances on and in property could constitute insured damage to property, and knew for 15 years that they had available a virus exclusion drafted by one of their associations. Despite this knowledge, as Another Planet alleged, Vigilant sold Another Planet insurance without including any limiting language or warning Another Planet that it would not cover pandemic-associated losses caused by the physical alterations of property surfaces, or the content of the air and airspace inside Another Planet's insured locations.

---

[1] *See, e.g.*, Chubb Limited Annual Report 2019 at 19 ("We have substantial exposure to losses resulting from natural disasters, man-made catastrophes such as terrorism or cyber-attack, and other catastrophic events, *including pandemics*." (emphasis added)); *id.* at 36 (listing "infection rates and severity of pandemics and their effects on our . . . claims activity" as among several factors that could materially affect financial performance), *available at* https://s1.q4cdn.com/677769242/files/doc_financials/2020/ar/2019-Chubb-Limited-Annual-Report.pdf.

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 3



The United States District Court for the Northern District of California dismissed the First Amended Complaint with prejudice on June 21, 2021, reasoning that "the closure orders—and not virus's alleged presence at Another Planet's facilities—caused it to shut down," a conclusion that ignores the many facts alleged to the contrary. *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 2021 WL 2670743, at *1 (N.D. Cal. June 21, 2021). Addressing the allegation that the State of Nevada (where Another Planet conducts a portion of its business) issued its closure orders, in part, because SARS-CoV-2 was causing "'contamination, damage, and property loss,'" the district court sidestepped the issue, remonstrating, "That language may raise interesting questions about what's happening in the halls of Nevada's executive branch, but it still does not suggest that closure orders were passed 'as a direct result' of the virus having caused actual property damage . . . ." *Id.*[2] Thus, the district court rejected the statements of other government officials and effectively resolved all factual issues alleged in the First Amended Complaint without evidence and without permitting Another Planet to present its case.

Another Planet timely appealed the district court's order of dismissal and judgment. The appeal before the Ninth Circuit has been briefed fully, and the court heard oral arguments on December 9, prior to certifying the appeal's central question to this Court. *Another Planet Ent. LLC v. Vigilant Ins. Co.*, --- F.4th --- , 2022 WL 17972557 (9th Cir. Dec. 28, 2022). The Ninth Circuit formulated the question as follows:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

*Id.* at *3.

## II.   <u>This Court Should Accept Review of the Certified Question</u>

"In exercising its discretion to grant or deny the request, the Supreme Court may consider whether resolution of the question is necessary to secure uniformity of decision or to settle an important question of law, and any other factor the court deems appropriate." Cal. R. Ct. 8.458(f)(1). As discussed below, there are several reasons to accept review of the Ninth Circuit's certified question, including the need

---

[2] All agree that California law governs this appeal, regardless of Another Planet conducting some of its business in Nevada.

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 4



to resolve a circuit split among the courts of this State, and the importance of the issues of law presented.

### A.   The California Court of Appeal Has Split on this Appeal's Core Question

The California Court of Appeal has issued eight published decisions on business interruption insurance claims arising from the COVID-19 pandemic:

1. *Inns-by-the-Sea v. California Mutual Insurance Co.*, 71 Cal. App. 5th 688 (2021), *review denied* (Mar. 9, 2022);

2. *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Insurance USA Inc.*, 77 Cal. App. 5th 753 (2022);

3. *United Talent Agency v. Vigilant Insurance Co.*, 77 Cal. App. 5th 821 (2022);

4. *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Co.*, 81 Cal. App. 5th 96 (2022);

5. *Apple Annie, LLC v. Oregon Mutual Insurance Co.*, 82 Cal. App. 5th 919 (2022);

6. *Amy's Kitchen, Inc. v. Fireman's Fund Insurance Co.*, 83 Cal. App. 5th 1062 (2022);

7. *Shusha, Inc. v. Century-National Insurance Co.*, --- Cal. App. 5th ---, 2022 WL 18110247 (Dec. 14, 2022); and

8. *John's Grill, Inc. v. Hartford Financial Services Group, Inc.*, --- Cal. App. 5th ---, 2022 WL 17959561 (Dec. 27, 2022).

Of these decisions, *Amy's* and *John's* involved insurance policies with special coverages that distinguish them from the vast majority of pandemic insurance cases (including Another Planet's).[3]  And unlike Another Planet's allegations—which

---

[3]  *Amy's* involved a communicable disease coverage extension that promised to repay cleaning and mitigation costs, and the plaintiff there did not seek coverage for business losses.  83 Cal. App. 5th at 1068-70.  The *John's* court explained that the insurance policy before it contained a specialized coverage specific to losses caused by viruses, with a coverage grant and definitions that do not appear in most, if any,

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 5



specifically claim that the virus was in, on, or around covered property, causing damage—the insured in *Musso* only alleged losses arising from the governmental orders forcing it to close, seeking coverage under an insurance policy that contained an exclusion for losses caused by viruses that is not present in Another Planet's Policy. 77 Cal. App. 5th at 755-56. *Apple* similarly did not allege that SARS-CoV-2's physical presence caused its losses. 82 Cal. App. 5th at 924-25.

Thus, *Inns*, *United*, *Marina*, and *Shusha* are the only four of the eight cases that addressed allegations like Another Planet's under insurance terms resembling those in Vigilant's Policy. They cannot be reconciled as to the Ninth Circuit's certified question: whether SARS-CoV-2's presence can cause "direct physical loss or damage" to property, as that undefined phrase is used in "all-risks" property insurance policies.

*Inns* examined the issue hypothetically, for the plaintiff there did not allege damage *caused* by the presence of SARS-CoV-2, just business losses stemming from local closure orders. 71 Cal. App. 5th at 703. Nevertheless, the court opined, based on its extensive review of case law, "[I]t could be possible, in a hypothetical scenario, that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property." *Id.* at 704.

In *United*, the plaintiff alleged (as Another Planet does) that SARS-CoV-2 was physically present in, on, and around covered property, that the virus physically altered that property and rendered it unsafe, and that the virus's presence directly caused the plaintiff's losses. 77 Cal. App. 5th at 826-27. Thus, the plaintiff argued that its complaint fit the *Inns* hypothetical and that under California law, its lawsuit should move forward. *See id.* at 838-39. The court disagreed and specifically rejected the *Inns* hypothetical, electing to follow other courts, most not interpreting California law. *Id.* ("we agree with the majority of the cases finding that the presence or potential presence of the virus does not constitute direct physical damage or loss").

*Marina* expressly rejected *United* and adopted the *Inns* hypothetical, reinstating that plaintiff's detailed allegations (like Another Planet's) that SARS-CoV-2 was present in, on, and around covered property, that it physically altered the property, and that physical presence caused the plaintiff's losses. 81 Cal. App. 5th at 100-01. *Marina* recognized that cases like *Musso* and *Inns* were distinguishable because the plaintiffs in those cases had not alleged their losses were caused by the presence of the virus in, on, or around insured property. *Id.*

of the pandemic-related business interruption insurance cases decided to date. 2022 WL 17959561, at *1.

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 6



at 110-11. However, the *Marina* court explicitly acknowledged that its holding was not reconcilable with *United*. *Id.* at 111. *Marina* explained that under California's pleading standards, it did not agree with *United*'s dismissal of the plaintiff's fact-specific allegations "without evidence." *Id.*

Shusha, decided by the same panel that decided *Marina*, took the same approach as in *Marina*, reinstating the plaintiff's case because the operative complaint alleged facts that could not be resolved on a demurrer. 2022 WL 18110247, at *8. Considering the tension between *Marina* and *United*, the *Shusha* court rejected the insurer's argument that *Marina* had only created a "narrow exception" to *United*'s "general rule that pandemic-related damages are not recoverable under business loss coverage . . . ." *Id.* (*Marina* "did not carve out simply a 'narrow exception'").

Thus, there exists an irreconcilable conflict of authority from published decisions of the Court of Appeal as to the Ninth Circuit's certified question:

| *Yes, SARS-CoV-2 can cause "direct physical loss or damage" to property* | *No, SARS-CoV-2 cannot cause "direct physical loss or damage" to property* |
| --- | --- |
| *Marina* | *United* |
| *Shusha* | |
| *Inns* (hypothetically) | |

## B.     The Certified Question Poses Important Questions of Law

As the hundreds of COVID-19 insurance coverage cases filed in California state and federal courts demonstrate, business interruption insurance pervades California commerce. Businesses of all sizes and in all sectors routinely purchase—and insurance companies operating in California routinely sell—the insurance that is at the heart of Another Planet's case. Thus, the losses that Another Planet suffered during the COVID-19 pandemic are emblematic of losses suffered in all corners of this state, and the same questions raised in Another Planet's case touch thousands of other businesses coping with the economic hardships that the pandemic wrought. How the Court might answer the certified question, therefore, would directly impact substantially every industry in this State and help resolve disputes totaling billions of dollars.

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 7



This Court has not shied away in the past from providing long-term future guidance on important insurance issues. *See, e.g., AIU Ins. Co. v. Superior Court,* 51 Cal. 3d 807, 842-43 (1990) (upholding coverage under liability policies for claims alleging damage to property from pollutants); *Montrose Chem. Corp. v. Admiral Ins. Co.,* 10 Cal. 4th 645, 665 (1995) ("In the case of successive policies, bodily injury and property damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods." (footnote omitted)). It should do so again here, particularly when insurers, like Vigilant, have not provided the requisite clarity in their policies.

Unfortunately, the COVID-19 pandemic likely is a harbinger of future losses that may generate their own waves of coverage litigation.[4] The Court's determination of whether standard-form property insurance policies cover losses from the physical alterations to property caused by viruses would provide an important articulation of California law in the decades to come.

Additionally, answering the certified question will clarify pleading standards. A primary tension between *Marina* and *United* centers on what a plaintiff must plead in their complaint to state a viable cause of action. The facts pled in both cases are substantively identical—that SARS-CoV-2 was physically present in, on, and around insured properties (including that their employees had tested positive for COVID-19), and that SARS-CoV-2 was the cause of their business losses. *Compare Marina*, 81 Cal. App. 5th at 101-02, *with United*, 77 Cal. App. 5th at 825-26. Although the *United* court affirmed the superior court's order sustaining the

---

[4] *See, e.g.*, The White House, *American Pandemic Preparedness: Transforming Our Capabilities* at 5 (Sept. 2021) ("As devastating as the COVID-19 pandemic is, there is a reasonable likelihood that another serious pandemic that may be worse than COVID-19 will occur soon — possibly within the next decade."), *available at* https://www.whitehouse.gov/wp-content/uploads/2021/09/American-Pandemic-Preparedness-Transforming-Our-Capabilities-Final-For-Web.pdf; R.E. Baker, *et al.*, *Infectious disease in an era of global change*, 20 Nature Rev. Microbiol. 193, 202 (2022) ("Climate change, rapid urbanization and changing land-use patterns will increase the risk of disease emergence in the coming decades."), *available at* https://www.nature.com/articles/s41579-021-00639-z; *accord* UNESCO, *Pandemics to increase in frequency and severity unless biodiversity loss is addressed* (Oct. 29, 2020), *available at* https://www.unesco.org/en/articles/pandemics-increase-frequency-and-severity-unless-biodiversity-loss-addressed; Abraham Haileamlak, *Pandemics Will Be More Frequent*, 32(2) Ethiop. J. Health Sci. 228 (Mar. 2022), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9175207/.

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 8



insurer's demurrer, the *Marina* court examined pleading standards and reinstated that plaintiff's claims because it disagreed with *U*nited court's conclusions, holding:

> [T]he *United Talent* court, based on its de novo review, affirmed a trial court ruling that, like the decision we review, found—without evidence—the COVID-19 virus does not damage property. But the insureds here expressly alleged that it can and that it did, including the specific allegation they were required to dispose of property damaged by COVID-19. We are not authorized to disregard [the plaintiff's] allegations when evaluating a demurrer, as the court did in *United Talent*, based on a general belief that surface cleaning may be the only remediation necessary to restore contaminated property to its original, safe-for-use condition.

*Marina*, 81 Cal. App. 5th at 111. Thus, in addition to the substantive question of law, there is a controversy about what is sufficient to plead an entitlement to relief.[5]

## III. This Case Presents Additional Important Questions of California Insurance Law

Another Planet's case presents additional opportunities to restate and clarify the law of insurance policy interpretation on several key issues that have wide-ranging applicability and consequences.[6] Two of the most important are (i) the opportunity to stem a dangerous trend relying on a misstatement of the law in the widely respected treatise *Couch on Insurance* and (ii) the opportunity to clarify how courts applying California law should interpret an "all-risks" insurance policy when the insurer has elected not to include a standard and prolifically deployed exclusion.

---

[5] The fact that Another Planet's case is pending in federal court should not dissuade this Court's consideration of this, despite the difference between California and federal pleading standards. *Cf. Marina*, 81 Cal. App. 5th at 109-10 (recognizing the difference). The Ninth Circuit likely would not have certified its question if the difference between the procedural regimes were outcome-determinative.

[6] This Court has discretion to reframe certified questions to address any issues pertinent to the dispute. Cal. R. Ct. 8.548(f)(5); *Another Planet*, 2022 WL 17972557, at *3 ("We do not intend our framing of this question to restrict the California Supreme Court's consideration of any issues that it determines are relevant.").

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 9



## A.    "Direct Physical Loss" and the *Couch* Fallacy

The certified question relies on a key phrase that is ubiquitous in the coverage grants of "all-risks" insurance policies: "direct physical loss or damage" to property. Many courts have struggled with this undefined term, and Another Planet's case presents this Court with the opportunity to address its meaning. Should it do so, the law of insurance policy interpretation could be clarified in myriad situations when an insured's property is contaminated with an invisible agent, or otherwise rendered unfit or unsafe, affecting their ability to use that property.

Another Planet's case raises an issue that also arose in *Inns*, *United*, and *Marina*, questioning the meaning of "direct physical loss" versus "direct physical damage." Relying on "the very fundamental principle that policy language be so construed as to give effect to every term," *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1036 (2002), insureds like Another Planet have argued that there must be a difference between "loss" and "damage." *See, e.g.*, *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) ("[T]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating [the interpretive rule] that every word be given a meaning.").

Based on this difference, insureds have looked to cases that found property damage when it was invaded by invisible substances, or when it had been rendered unsafe or unfit for use, even though the property had not been physically altered. Principal among these cases are *AIU*, in which this Court, interpreting a liability policy, concluded that "[c]ontamination of the environment satisfies this requirement" of property damage, 51 Cal. 3d at 842, and *Hughes v. Potomac Insurance Co.*, in which a "dwelling building" that itself suffered no structural damage—but was rendered "completely useless to its owners" when adjacent land subsided—suffered real and severe damage for purposes of "all-risks" insurance. 199 Cal. App. 2d 239, 248-49 (1962), *disapproved on another ground in Sabella v. Wisler*, 59 Cal. 2d 21, 34 (1963). The *Hughes* court also cautioned that coverage should not be conditioned on a detectible change to the physical nature of the property "in the absence of a provision specifically limiting coverage in this manner." *Id.* at 248-49.[7]

---

[7] *See also Farmers Ins. Co. v. Trutanich*, 858 P.2d 1332, 1335 (Or. App. 1993) (methamphetamine odor constituted property damage); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("contamination by asbestos



On the other hand, insurers (including Vigilant) have argued that "direct physical loss or damage" to property requires "a distinct, demonstrable, physical alteration of the property." The leading California case in this regard is *MRI Healthcare Center, Inc. v. State Farm General Insurance Co.*, 187 Cal. App. 4th 766, 781 (2010), which held that a malfunctioning piece of medical imaging equipment did not cause covered losses without an external force acting upon the property to create a change in its physical condition. Based on this holding, insurers argue that the difference between "direct physical loss" and "direct physical damage" is merely one of degree: "loss" is when property is damaged beyond repair.

A central authority leading to the *MRI* court's holding was Steven Plitt, *et al.*, *Couch on Insurance*, chapter 10A, section 148:46 (3d ed. 2010), which states that most jurisdictions require "a distinct, demonstrable, physical alteration of the property" as a prerequisite to "all-risks" insurance with coverage grants that hinge on "direct physical loss or damage" to property. *See MRI*, 177 Cal. App. 4th at 778-79. Prior to the COVID-19 pandemic and resulting insurance claims, *Couch's* articulation of this principle was rarely cited. Indeed, in more than 20 years prior to 2021, only a handful of California appellate courts had ever cited it (three, or so, including *MRI*).[8]

Now, *Couch's* pronouncement of the law has taken center stage in COVID-19 insurance disputes. The Court of Appeal has discussed it in all but one of the eight

---

may constitute a direct, physical loss to property"); *Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (property sustained a direct physical loss due to presence of asbestos fibers); *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 405 (1st Cir. 2009) (odor from carpet and adhesive "*can* constitute physical injury to property"); *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 800 N.Y.S.2d 356, at * 5 (N.Y. Sup. Ct. 2005) ("the presence of noxious particles, both in the air and on surfaces . . . , would constitute property damage under the terms of the policy"); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co.*, 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014) (closure of facility because of accidentally released ammonia; while "structural alteration provides the most obvious sign of physical damage, . . . property can sustain physical loss or damage without experiencing structural alteration"); *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, 2016 WL 3267247, at *9 (D. Or. June 7, 2016) (smoke infiltration in theatre caused direct property loss or damage).

[8] A Westlaw search returned only two other published cases, *Doyle v. Fireman's Fund Insurance Co.*, 21 Cal. App. 5th 33 (2018), and *Simon Marketing, Inc. v. Gulf Insurance Co.*, 149 Cal. App. 4th 616 (2007).

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 11



cases decided thus far.[9]  Indeed, *Apple* was decided primarily on the question of whether "loss" required a "distinct, demonstrable, physical alteration of" property. Nationwide, this language from the *Couch* treatise has been cited manifold more times in the last two years than in all the years leading up to 2020, since it first appeared in the treatise in 1999.[10]

But *Couch* is wrong.  Or at least it was before COVID-19 coverage litigation commenced.  When insurers began relying heavily on the "distinct, demonstrable, physical alteration" language in the well-regarded treatise, a group of preeminent practitioners delved into the history of *Couch*'s pronouncement of the law and discovered it had been stated upside-down.  Richard P. Lewis, Lorelie S. Masters, Scott D. Greenspan & Chris Kozak, *Couch's "Physical Alteration" Fallacy: Its Origins and Consequences*, 56:3 Tort, Trial & Ins. Prac. L. J. 621 (Fall 2021).  In its first appearance in the treatise, *Couch* had relied on only one case from the United States District Court for the District of Oregon for its formulation of the supposed majority position—a case that the Oregon Court of Appeals repudiated three years later—and overlooked at least 13 other then-extant cases that held to the contrary, finding broader coverage not limited by any "physical alteration" when insureds could not use their property as intended.  *Id.* at 625.  By the beginning of 2020, at least 35 cases adopted a broader interpretation than *Couch*'s formulation of the law, and "significantly fewer follow[ed] the *Couch* test."  *Id.* at 622.

Outside of the treatise's pages, *Couch*'s primary author recognized that its "physical alteration" requirement was not representative of the law, writing, "The modern interpretive trend is liberalizing the meaning of direct physical loss to focus upon loss of use as opposed to direct physical loss involving physical alteration." Steven Plitt, *Direct Physical Loss in All-Risk Policies: The Modern Trend Does Not Require Specific Physical Damage, Alteration*, Claims J. (Apr. 15, 2013), *available at* https://amp.claimsjournal.com/magazines/idea-exchange/2013/04/15/226666.htm. Mr. Plitt concluded, "The modern trend signals that courts are not looking for physical alteration, but for loss of use.  This is the trend of where the law is going." *Id.*

---

[9]  *John's*, 2022 WL 17959561, at *7; *Shusha*, 2022 WL 18110247, at *6; *Apple*, 82 Cal. App. 5th at 827; *Amy's*, 83 Cal. App. 5th at 1068; *Marina*, 81 Cal. App. 5th at 106-07; *United*, 77 Cal. App. 5th at 832-33; *Inns*, 71 Cal. App. 5th at 701-02.

[10]  A Westlaw search for the words "distinct," "demonstrable," and "physical" within the same sentence returned 367 cases, 325 of which were decided since the first wave of COVID-19 insurance coverage decisions issued, beginning in August 2020.



The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 12

Nevertheless, the tail began to wag the dog. The *Couch* treatise's renown led courts to rely on its upside-down statement of the law unquestioningly as a "widely accepted definition" of "direct physical loss or damage to property." *Port Auth.*, 311 F.3d at 235 (quoting 10A Couch on Ins. 3d § 148:46). For nearly a quarter century, *Couch*'s misstatement has snowballed: the more that courts cited it, the more citations *Couch* collected to support its fallacy, which in turn encouraged still more courts to follow the fallacy. This only accelerated when the insurance industry seized upon *Couch*'s words as part of its campaign to reshape the law and avoid responsibility for the losses that it long knew the COVID-19 pandemic would inflict on their own bottom lines.[11]

*Couch* should not be followed, and Another Planet's case presents this Court with the opportunity to right the proverbial ship. Courts—including the Court of Appeal—rely on the "physical alteration" formulation in *Couch* to the detriment of sound insurance jurisprudence. In addition to threatening to deprive businesses of their insurance resources in one of the worst calamities of the last century, relying on *Couch*'s formulation of the law "risk[s] overruling decades of insurance law and drastically narrowing the scope of property insurance that forms the backbone of risk protection for homeowners, businesses, and the banks that lend to them." Lewis, *et al.*, *supra*, at 623.

In short, "loss" is different from "damage." *Couch* is a primary driver of decisions to the contrary that threaten to undo the principles of insurance law that this Court has crafted over many decades of careful decisions. Another Planet's case is a chance to reinstate and strengthen that regime.

## B.    The Virus Exclusion as Extrinsic Evidence of Intent

Another Planet's case also presents this Court the opportunity to clarify what it means when an insurer declines to include an available exclusion in an "all-risks" insurance policy. Another Planet's Policy, like most "all-risks" policies, promises coverage for all risks of loss unless plainly, clearly, conspicuously, and expressly excluded. In 2006, the Insurance Services Office ("ISO") developed and released a

---

[11] *See, e.g.*, Erik F. Knutsen & Jeffrey W. Stemple, *Infected Judgment: Problematic Rush to Conventional Wisdom and Insurance Coverage Denial in a Pandemic*, 27 Conn. Ins. L. J. 186, 230-34 (2021) (describing the insurance industry's campaign to avoid pandemic-related claims in the media and in courtrooms, including collapsing the distinctions between "loss" and "damage"); *see also supra,* n.1 (Chubb statements regarding risk of pandemics to earnings).

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 13



standardized "all-risks" insurance exclusion for losses due to viruses and bacteria.[12]
In the accompanying circular, ISO noted that examples of "viral and bacterial
contaminants are rotavirus, SARS, [and] influenza," observing, "The universe of
disease-causing organisms is always in evolution."[13] ISO recognized that viruses
could cause property damage, stating:

> Disease-causing agents may render a product impure
> (change its quality or substance), or enable the spread of
> disease by their presence on interior building surfaces or
> the surfaces of personal property. When disease-causing
> viral or bacterial contamination occurs, potential claims
> involve the cost of replacement of property (for example,
> the milk), cost of decontamination (for example, interior
> building surfaces), and business interruption (time
> element) losses.[14]

ISO expressly warned that "the specter of pandemic or hitherto unorthodox
transmission of infectious material raises the concern that insurers employing
[property] policies may face claims in which there are efforts to expand coverage
and to create sources of recovery for such losses, contrary to policy intent."[15] Thus,
ISO thought that policyholders reasonably could expect coverage for losses caused
by viruses under "all-risks" policies, and to assist insurers in making plain the
intent *not* to cover virus-related losses, ISO issued its standard exclusion.

But despite widespread use of the standard exclusion for over a decade,
Vigilant elected not to include the exclusion (or any virus exclusion) in the Policy's
first-person property and business interruption coverages. Many courts considering
COVID-19 insurance have encountered what meaning to give to the absence of this
exclusion, including *Inns*. 71 Cal. App. 5th at 708-09. Resolving that question
would resolve many COVID-19 insurance disputes, but it also would apply to

---

[12] *See* ISO Circular, "New Endorsements Filed to Address Exclusion of Loss Due to
Virus or Bacteria," (July 6, 2006),
https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.

[13] *Id.*

[14] *Id.*

[15] *Id.*

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 14



insurance disputes far beyond the pandemic context, providing clarity whenever an insurer decides not to include an available exclusion in an "all-risks" policy.

California contract law acknowledges that materials outside the "four corners" of a contract may be essential to ascertaining contracting parties' intent. "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence . . . ." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) (citation omitted). California's law of insurance policy interpretation relies on an evaluation of not only what language *constitutes* a policy, but also what language was *omitted* when drafting the policy. In construing an insurance policy, knowing what is not—but could have been—in the policy carries legal significance. *See Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) (courts "are not to insert what [the insurer has] omitted"); *Fireman's Fund Ins. Cos. v. Atl. Richfield Cos.*, 94 Cal. App. 4th 842, 852 (2001) (an insurer's "failure to use available [exclusionary language] gives rise to the inference that the parties intended not to so limit coverage"). For example, in *Pardee Construction Co. v. Insurance Co. of the West*, the California Court of Appeal looked to subsequent drafts of ISO standard forms to ascertain the insurance policy's meaning, basing its decision to hold against the insurer because those drafts "evince . . . alternative express limiting language that could have been employed." 77 Cal. App. 4th 1340, 1359 (2000).

Based on these principles, Another Planet and other insureds have argued that they reasonably believed that viruses can (and do) cause "direct physical loss or damage" to property, and that the exclusion's absence from the Policy indicates that losses caused by viruses are covered. *See, e.g., Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 78 (Wis. 2004) ("If the insuring agreement never confers coverage for this type of liability as an original definitional matter, then there is no need to specifically exclude it. Why would [an insurer] exclude [a type of damage] if the damage could never be considered [covered] in the first place?"). At the very least, the existence of the exclusion and its absence from the Policy creates an ambiguity as to whether viruses can cause covered losses—an ambiguity that must be resolved in favor of coverage. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470-71 (2004) ("Ambiguity is resolved by interpreting the ambiguous provisions in the sense the insurer believed the insured understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured. Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." (cleaned up)).

The Honorable Chief Justice and Associate Justices
Supreme Court of California
January 17, 2023
Page 15

P

Insurers, like Vigilant, counter by arguing that—regardless of what Chubb, ISO, or other insurance companies may have said regarding their exposure to losses caused by viruses—the omission of an exclusion from a policy does not create coverage. Rather, only the coverage grant creates coverage, and because a virus cannot cause "direct physical loss or damage" to property, the absence of the virus exclusion is immaterial. *See Inns*, 71 Cal. App. 5th at 708-09 (relying heavily on authorities from outside of California).

This question is intertwined with the Ninth Circuit's certified question, and its resolution would provide important guidance to litigants evaluating "all-risks" policies that do not contain exclusions that the insurer could have included but did not.

\*     \*     \*

The Ninth Circuit's certified question is of such far-reaching importance on issues of unsettled law that it is only proper for this Court to provide guidance to courts, insurers, and businesses throughout the state. This is especially true now that the Court of Appeal has divided on the proper application of California law to substantively identical claims. The issues described above are neither unique to Another Planet, nor are they cabined solely to the COVID-19 context. The Court should accept the certification.

Respectfully submitted,

PASICH LLP

Kirk Pasich                    Nathan M. Davis