

# University of Connecticut
## School of Law



RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAN 23 2023

FILED
DOCKETED _____
DATE _____ INITIAL

Travis Luis Pantin
Associate Professor
& Director of the
Insurance Law Center

January 17, 2023

Honorable Chief Justice Patricia Guerrero
 and the Honorable Associate Justices
California Supreme Court
350 McAllister Street
San Francisco, California 94102-7303

21-16093

Re: Letter in Support of Accepting Certified Question from the United States Court of Appeals for the Ninth Circuit in *Another Planet Entertainment v. Vigilant Insurance Company*, No. S277893

To the Honorable Chief Justice and Associate Justices of the California Supreme Court:

    I write in support of the request from the United States Court of Appeals for the Ninth Circuit that the California Supreme Court answer the question certified in *Another Planet Entertainment v. Vigilant Ins. Co.*, No. S277893. As the Director of the Insurance Law Center of the University of Connecticut School of Law, I have a strong interest in the Court's answer to the certified question. The Insurance Law Center is the co-sponsor, with the University of Pennsylvania Carey Law School, of the Covid Coverage Litigation Tracker (the "CCLT"). The CCLT is widely regarded as an authoritative public source of information about the over 2,100 COVID-related business interruption insurance coverage cases proceeding through the state and federal courts across the country.[1] Much of the

---

[1] https://cclt.law.upenn.edu/. The CCLT is regularly cited by courts and news media. *See, e.g., Inns-by-the-Sea v. California Mut. Ins. Co.*, 71 Cal.App.5th 688, 692 n. 1 (2021); *Huntington Ingalls Ind., Inc. v. ACE American Ins. Co.*, 2022 WL 439645 at *5 (Vt. 2022); Leslie Scism, *Covid-19 Insurance Lawsuits Move Toward High-Stakes Phase*, WALL STREET JOURNAL (Nov. 16, 2021).

*An Equal Opportunity Employer*

65 Elizabeth Street
Hartford, CT 06105
Telephone: (512) 917-2678
Email: travis.pantin@uconn.edu

Document received by the CA Supreme Court.

work on the CCLT has been performed by talented and dedicated law students at the University of Connecticut under the auspices of the Insurance Law Center.

I write for two reasons:

1. To provide information about the importance of the certified question based on the work of the CCLT team; and
2. To respectfully suggest that the Court agree to answer this important question, but hold the question until it addresses a logically antecedent question in the context of one of the cases pending in the California Courts of Appeal that squarely presents that antecedent question.

### The Importance of the Certified Question

The Ninth Circuit has certified the following question:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

The meaning of the standard-form, undefined term "direct physical loss or damage to property" lies at the heart of nearly every one of the more than 260 COVID-related business interruption coverage cases in the state and federal courts in California and the roughly 2,100 such cases that the CCLT is tracking nationwide. The centrality of the interpretation of this insurance policy term to the resolution of these cases is, however, not the only reason why the Court should accept the request of the Ninth Circuit.

Accepting the request would also help restore the proper balance between state and federal judicial authority regarding this important and unsettled state law question. Despite the uncertainty regarding the interpretation of this term in California and most other states, and despite the importance of this interpretive question to many businesses in California and other states, the Ninth Circuit is the only federal appellate court that has asked a state court for guidance regarding the interpretation of this insurance policy term in the context of the COVID-19 pandemic.

Every other federal appellate court except for the First Circuit (which waited for the Massachusetts Supreme Judicial Court to decide a COVID-19

Document received by the CA Supreme Court.

2

Case: 21-16093, 01/23/2023, ID: 12637360, DktEntry: 62, Page 3 of 10

insurance coverage case first)[2] chose to make an *Erie* guess rather than certifying the question or waiting for state high court guidance, reasoning that the federal appellate courts could follow the relevant state's generic rules governing insurance contract interpretation just as well as the highest court in that state.[3] Indeed, in its prior decisions on this issue, even the Ninth Circuit held that it could decide the

---

[2] By the time the First Circuit heard its first COVID-19 appeal, the Massachusetts Supreme Judicial Court had exercised its discretion to take immediate appeal of a COVID coverage decision in *Verveine Corp. v. Strathmore Ins. Co.*, 489 Mass. 534, 2022 WL 1180061 (2022). The First Circuit waited for the Supreme Judicial Court to decide *Verveine* before deciding the federal appeal. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 30 (1st Cir. 2022).

[3] See *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 225 (2d Cir. 2021) ("We therefore deny 10012 Holdings's alternative request to certify the proposed question to the New York Court of Appeals."); *Wilson v. USI Ins. Serv. LLC*, No. 20-3124, 2023 U.S. App. LEXIS 303, at *8-9 (3d Cir. Jan. 6, 2023) ("We predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us . . . ."); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 933 n.10 (4th Cir. 2022) ("Because we conclude that the state court's decision in *Murray* does not render ambiguous the meaning of 'physical loss' or 'physical damage' under West Virginia law, we deny Uncork's alternative request seeking certification to the state court."); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citations omitted) ("Pursuant to *Erie*, the court must make an '*Erie* guess' as to how the Texas Supreme Court would decide the issue."); *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 29 F.4th 252, 257 (5th Cir. 2022) ("Pursuant to *Erie*, the court must make an '*Erie* guess' as to how the Louisiana Supreme Court would decide the issue."); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021) (making an *Erie* guess based on Ohio law); *Sandy Point Dental, P.C. v. Cin. Ins. Co.*, 20 F.4th 327, 331 (7th Cir. 2021) ("Our task is to predict how the Supreme Court of Illinois would resolve the issue."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (making an *Erie* guess under Iowa law); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 709-10 (10th Cir. 2021) (making an *Erie* guess based on Oklahoma law after noting that the Oklahoma Supreme Court has not addressed this question); *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1357 (11th Cir. 2022) ("There are no Florida decisions [on point] . . . . We therefore consider whatever might lend [us] insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [Florida Supreme Court] would decide the issue at hand.").

Document received by the CA Supreme Court.

3

issue without seeking guidance from the state's highest court.[4] Yet, as the conflict among the California Courts of Appeal regarding the interpretation of "physical loss or damage" in the COVID-19 context demonstrates,[5] state law rules governing insurance contract interpretation do not mechanically answer the certified question. The following colorful map taken from the CCLT website, which depicts the various positions taken in the state appellate courts, further reinforces this conclusion:



---

[4] See, e.g., *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ("When interpreting state law, we are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises."); *id.* at 890 n.3 (declining to certify).

[5] *Compare United Talent Agency v. Vigilant Insurance Co.*, 77 Cal. App. 5th 821 (2022) (holding that the presence of COVID does not constitute direct physical loss or damage) *with Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Co.*, 81 Cal. App. 5th 96 (2022) (holding that insureds had successfully pleaded direct physical loss or damage by alleging the presence of COVID on the property) and *Shusha, Inc. v. Century-National Ins. Co.*, 2022 WL 18110247 (Dec. 14, 2022; ordered publ., Jan. 5, 2023) (same); *see also Tarrar Enterprises, Inc. v. Associated Indemnity Co.* 83 Cal.App.5th 685 (2022) (holding that it was error for the trial court to decline to allow the policyholder leave to amend to plead a claim for coverage).

4

As is demonstrated in a detailed review of caselaw published in 2019, shortly before the pandemic, state law regarding interpretation of the term "physical loss or damage to property" in property insurance policies is surprisingly unsettled in the context of invisible-to-the-naked-eye allegations of physical loss or damage such as those presented in *Another Planet* and other COVID-19 business interruption cases. *See* Scott G. Johnson, *What Constitutes Physical Loss or Damage in a Property Insurance Policy*, 54 TORT TRIAL & INS. PRAC. L.J. 95 (2019). Notably, the term "direct physical loss or damage to property" (or a variation) appears in every commercial property insurance policy that we have examined during the CCLT project, and that term is not defined in any of those policies. As a result, the interpretation of that term lies significantly within the discretion of state courts, subject of course to precedent and each state's rules of insurance policy interpretation.

Prior to the pandemic, there were high court decisions in a few states that support the policyholders' position (*i.e.*, that the presence of COVID-19 on the premises can cause physical loss or damage), and high court decisions in a few other states that support the insurers' position (*i.e.*, that it cannot). *Id.* But most state high courts, including this Court, had not addressed cases with facts that were similar enough to provide much guidance. *Id.* Indeed, what is arguably the leading California case is from the Court of Appeal: *MRI Healthcare Center of Glendale, Inc. v. State Farm General Insurance Co.*, 187 Cal. App. 4th 766 (2010) (addressing a policy that covered "accidental direct physical loss"). As I teach my students, any good insurance coverage lawyer can explain in one breath how *MRI Healthcare* supports the policyholder position in the COVID business interruption cases, and then in another breath how *MRI Healthcare* supports the insurer position in those same cases. That is a good indication that the state of the law in California would be uncertain on this question even if *MRI Healthcare* were a decision of this Court.

Finally, it may be helpful to be reminded that the U.S. Supreme Court case that *Erie v. Tompkins*, 304 U.S. 64 (1938) overruled – *Swift v. Tyson*, 42 U.S. 1 (1842) – was a commercial contract interpretation case in which the Supreme Court held that federal courts could interpret contracts just as well as state courts and, thus, that federal courts were not bound by state courts' contract interpretation decisions. The decision by nine of the eleven general jurisdiction U.S. Courts of Appeals to decide this important and unsettled state law question without certifying the question may not be a technical violation of *Erie* (that is a question for my constitutional law and federal courts colleagues to address), but it certainly rings of the federal court supremacy envisioned in *Swift v. Tyson* and ignores the decision of Congress in the McCarran-Ferguson Act to confer authority over insurance issues on the states. Answering the certified question would recognize the appropriate deference the Ninth Circuit has now shown in

Document received by the CA Supreme Court.

5

making this request and reinforce the supremacy of the California Supreme Court in deciding the meaning of insurance policy provisions under California law.

### A Suggestion Regarding the Process of Answering the Certified Question

If the Court accepts the Ninth Circuit's request and agrees to answer the certified question, I respectfully suggest that the Court hold the question and answer it in the context of one or more of the cases already in the California appellate court process that squarely present the logically antecedent question that currently divides the Courts of Appeal in California. This logically antecedent question is whether the actual presence—as opposed to the "actual or potential presence"—of COVID-19 on an insured's premises (or, for "civil authority" coverage, in the pertinent vicinity of the insured's premises) can constitute direct physical loss or damage to property for purposes of coverage under a commercial property insurance policy.

The plaintiff in *Another Planet Entertainment* has not made the kind of detailed allegations regarding the actual presence of COVID-19 at its premises (and the resulting changes to the surfaces and air in the premises) made in the published cases in which the Second Appellate District held that the policyholder had adequately alleged physical loss or damage, *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 81 Cal.App.5th 96 (2022), and *Shusha, Inc. v. Century-National Ins. Co.* (Dec. 14, 2022; ordered publ., Jan. 5, 2023) 2022 WL 18110247. Rather, *Another Planet Entertainment* alleges that COVID-19 "has been present at Another Planet's insured properties and/or would have been present had Another Planet not taken steps to reduce, prevent, or otherwise mitigate its presence on its insured properties and had the Closure Orders not been issued." First Amended Complaint at paragraph 77.

The gap between the facts alleged in *Another Planet Entertainment* and in *Marina Pacific* and *Shusha* raises the possibility that the appellant's briefing regarding the certified question will not present the best case for the Court to address the meaning of "direct physical loss or damage to property" when COVID-19 is actually present on insured premises. As a result, there is a risk that the Court may either misapprehend the issue presented or answer the certified question without conclusively resolving the meaning of the term as presented in *Marina Pacific, Shusha,* and other cases presenting stronger factual allegations. Notably, neither the insurer in *Marina Pacific*, nor the insurer in *Shusha*, has chosen to appeal the appellate decision to this Court, which has had the effect of delaying the arrival of cases with more expansive factual allegations of physical loss or damage.

Document received by the CA Supreme Court.

making this request and reinforce the supremacy of the California Supreme Court in deciding the meaning of insurance policy provisions under California law.

### A Suggestion Regarding the Process of Answering the Certified Question

If the Court accepts the Ninth Circuit's request and agrees to answer the certified question, I respectfully suggest that the Court hold the question and answer it in the context of one or more of the cases already in the California appellate court process that squarely present the logically antecedent question that currently divides the Courts of Appeal in California. This logically antecedent question is whether the actual presence—as opposed to the "actual or potential presence"—of COVID-19 on an insured's premises (or, for "civil authority" coverage, in the pertinent vicinity of the insured's premises) can constitute direct physical loss or damage to property for purposes of coverage under a commercial property insurance policy.

The plaintiff in *Another Planet Entertainment* has not made the kind of detailed allegations regarding the actual presence of COVID-19 at its premises (and the resulting changes to the surfaces and air in the premises) made in the published cases in which the Second Appellate District held that the policyholder had adequately alleged physical loss or damage, *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 81 Cal.App.5th 96 (2022), and *Shusha, Inc. v. Century-National Ins. Co.* (Dec. 14, 2022; ordered publ., Jan. 5, 2023) 2022 WL 18110247. Rather, *Another Planet Entertainment* alleges that COVID-19 "has been present at Another Planet's insured properties and/or would have been present had Another Planet not taken steps to reduce, prevent, or otherwise mitigate its presence on its insured properties and had the Closure Orders not been issued." First Amended Complaint at paragraph 77.

The gap between the facts alleged in *Another Planet Entertainment* and in *Marina Pacific* and *Shusha* raises the possibility that the appellant's briefing regarding the certified question will not present the best case for the Court to address the meaning of "direct physical loss or damage to property" when COVID-19 is actually present on insured premises. As a result, there is a risk that the Court may either misapprehend the issue presented or answer the certified question without conclusively resolving the meaning of the term as presented in *Marina Pacific, Shusha,* and other cases presenting stronger factual allegations. Notably, neither the insurer in *Marina Pacific*, nor the insurer in *Shusha*, has chosen to appeal the appellate decision to this Court, which has had the effect of delaying the arrival of cases with more expansive factual allegations of physical loss or damage.

Document received by the CA Supreme Court.

One case already in the California appellate process that squarely presents this issue and that the Court might consider for transfer to its docket is *Oakland Athletics Baseball Company vs. Factory Mutual Insurance Company*, Docket No. A166541 (Cal. Ct. App. Nov 07, 2022). The trial court in that case sustained the insurers' demurrer, ruling that "Plaintiffs fail to allege physical loss or damage within the meaning of the policies as a matter of law." *Oakland Athletics Baseball Company et al vs. AIG Specialty Insurance Company*, No. RG20079003 (Superior Court Alameda Cty, June 20, 2022) (note that the first defendant/respondent was changed on appeal). As the trial court reported in the order sustaining the demurrer:

> Plaintiffs allege that COVID-19 was present on their properties, and that it was present before governmental orders were in effect. (SAC, ¶¶ 113, 119.) …. Plaintiffs allege that the physical nature of COVID can be seen in the remedial measures Plaintiffs undertook. (SAC, ¶¶ 140-143.) Plaintiffs allege some of the remedial measures included "cleaning and disinfecting premises; remodeling and reconfiguring physical spaces; constructing extended dugouts and bullpens; creating new dining, training, and isolation areas to allow for physical distancing; installing, repairing, and replacing air filtration systems; and installing of Plexiglas barriers, hand sanitizer dispensers, and touchless features such as faucets."

*Id.* [6]

I respectfully urge the Court to accept the request of the Ninth Circuit. In addition, I respectfully suggest that the Court first interpret the insurance policy term at issue in a case such as *Oakland Athletics*, which alleges in detail the actual presence of COVID-19 on the insured premises.

Respectfully Submitted,

Travis Luis Pantin
Director of the Insurance Law Center
Associate Professor of Law
University of Connecticut School of Law

---

[6] Another pending appeal presenting the same issue in connection with similarly detailed allegations is *San Jose Sharks LLC v. Superior Court*, No. H050441.

Document received by the CA Supreme Court.

# PROOF OF SERVICE
## No. S277893

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action. My business address is 1999 Avenue of the Stars, 35th Floor, Los Angeles, California 90067. On January 17, 2023, I served the following document(s) described as:

**LETTER IN SUPPORT OF ACCEPTING CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN ANOTHER PLANET ENTERTAINMENT V. VIGILANT INSURANCE COMPANY, NO. S277893**

on the interested parties in this action as follows:

Kirk Pasich
Nathan M. Davis
Arianna M. Young
Pasich LLP
10880 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90024-3109

Jonathan D. Hacker
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006

Douglas J. Collodel
Gretchen S. Carner
Brett C. Safford
Clyde & Co. US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, CA 90071-5556

Susan Koehler Sullivan
Sedgwick LLP
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556

Document received by the CA Supreme Court.

[x] (BY TRUEFILING) By filing and serving the foregoing through Truefiling such that the document will be sent electronically to the eservice list on January 17, 2023; and

Office of the Clerk James R. Browning Courthouse
U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119-3939

[x] (BY MAIL) By causing the document to be sealed in an envelope addressed to the recipient above, with postage thereon fully prepaid, and placed in the United States mail at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this proof of service is executed at Los Angeles, California on January 17, 2023.

*Janet Glick* (signature)
Janet Glick

Document received by the CA Supreme Court.